In the Matter of the Application of J. CLARENCE HERLIHY, Respondent, for an Adjudication of His Rights as Attorney in the Actions Brought by Him on Behalf of JOEL NEWMAN as Plaintiff against PHOENIX ASSURANCE COMPANY, LTD., et al., Defendants.

STATE TAX COMMISSION, Appellant; UNITED STATES OF AMERICA, Intervener, Appellant.

Third Department, November 10, 1948.

*J. Clarence Herlihy* respondent in person.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown, Solicitor-General, Edward J. Grogan, Jr., Hyman E. Mintz, Assistant Attorneys-General,* of counsel), for State Tax Commission, appellant.

*Irving J. Higbee, United States Attorney (Edmund Port, Assistant United States Attorney, Theron Lamar Caudle, Assistant Attorney General* and *Sewall Key, Robert N. Anderson, Frank K. Foster, Special Assistants to the Attorney General,* of counsel), for United States of America, appellant.

BREWSTER, J. By the order appealed from the court determined the amount and directed enforcement of petitioner-respondent's attorney's lien in a proceeding under section 475 of the Judiciary Law. It was ordered paid from the proceeds of a settlement of nineteen actions at law brought by one Newman against various fire insurance companies on fire insur-

ance policies issued by them, to recover for loss and damage sustained by fire. In those actions petitioner-respondent was the insured's attorney of record. He was employed under a written contract of retainer, the integrity of which has not been questioned, and which stipulated as payment for legal services a contingent fee of 20% " of any sum recovered * * *· together with disbursements, whether recovered by suit, settlement or otherwise."

Petitioner's lien arose upon the commencement of the actions against the insurance companies, on December 28, 1946. The contract of retainer was dated May 29, 1946. The loss by fire was on May 5, 1946.

For a year and upwards prior to the commencement of the actions against the insurance companies, the defendant-intervener, the United States of America, had tax liens perfected (for unpaid income taxes), against all " property and rights to property * * * belonging " to said Newman, (Internal Revenue Code, §§ 3670, 3671; U. S. Code, tit. 26). By the filing of a warrant for unpaid New York State income taxes in New York County Clerk's Office on May 8, 1946, and docketing its transcript in the Warren County Clerk's Office on June 3, 1946, ·by the defendant, State Tax Commission, the State also acquired a lien upon " the real and personal property and chattels real " of said Newman. (Tax Law, § 380.)

In all of the aforesaid actions one Ahearn, the Glens Falls Investing Company, the State Tax Commission and the United States of America were made or became parties defendant and appeared therein by their own attorneys. During the pendency of the actions defendants Ahearn and Glens Falls Investing Company moved for and were granted summary judgments for the amounts due on their respective claims, and on June 29, 1947, all of the actions, as against the defendant insurance companies were, by an order made on stipulation, settled in the stated sum of $121,990.59 and discontinued upon the payment to the defendants Ahearn and Glens Falls Investing Company of $32,600 and $6,890.59, respectively (presumably in payment of their aforesaid judgments), and by the payment of the balance, $82,500 into court to the credit of the plaintiff Newman and the defendants State Tax Commission and the United States of America, " as their interest may be determined by this Court upon proper application."

The appellants, United States of America and State Tax Commission, contend (1) that the pendency of the nineteen actions, wherein priority of the tax liens is still at issue, pre-

cluded petitioner's resort to the remedy he sought and obtained; (2) that in no event may the amount of his lien be computed upon the moneys recovered by defendants Ahearn and Glens Falls Investing Company, and, (3) that their tax liens upon the proceeds of the settlement which are now in court are superior to and have priority in payment over the lien of petitioner.

As to the exercise of the Special Term's power to determine and direct the enforcement of petitioner's lien we see no impediment by the pendency of the actions between plaintiff Newman and the remaining defendants. There the only issue left is priority as between the tax liens. The tax liens as such are not disputed. The determination of petitioner's lien is a separate and independent matter having issues not raised in the pending actions and in its proceeding the owners of the tax liens appeared and had their day in court.

On the record before us the Special Term was in error in including the sums recovered by Ahearn and Glens Falls Investing Company as a recovery by the plaintiff Newman upon which the amount of petitioner's lien may be computed. The record indicates and it seems conceded that those defendants, represented by their own attorneys, recovered judgments upon their claims to which they were entitled, directly and independently of the plaintiff's demands. If so, they formed no part of the latter's causes of action or proceeds therefrom. The arrangement made upon settlement for the payment of those judgments did not alter the situation.

As to the conflict over the supremacy of the tax liens and the lien of the petitioner on the balance of the proceeds paid into court, we agree with the effect of the Special Term's order which was to accord preference to the latter. The contracts of fire insurance were personal between the insured and the insurer. They did not attach to or run with the property insured. (29 Am. Jur., Insurance, § 126.) Upon the occurrence of the loss by fire the claims against the insurers were owned by the insured. His was the right to sue. The governmental lienors had no such right, and that they might have sued by representation is beside the point as concerns the legal title to the proceeds of the litigation. As to the part of the proceeds paid into court, the insured, Newman, held the legal title. Until those proceeds resulted the tax liens which by the general sweep of the statutes were extended to the choses in action, in reality, consisted of rights to have the liens impressed upon the proceeds. The tax liens were general in nature (*City of Winston-Salem* v.

*Powell Paving Co.,* 7 F. Supp. 424, 427) and naught was done to fasten them upon the intangible claims. A lien contemplates and implies something susceptible of being bound and which is bound. When the litigation produced the proceeds paid into court the tax liens then became a reality as liens, and attached to them to the extent of Newman's right and interest therein, and were a charge thereon for the payment of the tax delinquencies. But even there the liens in and of themselves conferred upon the lienors no legal title to the proceeds. On the contrary they presupposed ownership in the debtor. Having the title, what, then, was the interest he owned in the proceeds and to which the tax liens attached? Contemporaneous with the attachment of the tax liens to the proceeds came the attachment of the attorney's charging lien. That lien has its roots in considerations of equity and the statute regulating it is remedial in nature and calls for a liberal construction (*Fischer-Hansen* v. *Brooklyn Heights R. R. Co.,* 173 N. Y. 492, 499); and it has been generally held that, to the extent of its amount, it is to be regarded as an equitable assignment to the attorney of the funds produced by his efforts. (6 C. J., Attorney and Client, p. 766, and cases there cited.) Thus, when the legal concept of the statutory pronouncement of the tax liens upon the choses in action developed into liens in reality upon their proceeds, the interest the debtor then owned in them was subject to their equitable assignment to petitioner to the amount of his charging lien. The facts disclose equities which proclaim petitioner's lien superior to the tax liens since it is grounded upon a reasonable payment for services which were indispensably instrumental in producing the funds upon which the tax liens could attach and out of which they may in considerable measure be paid.

In another view it is sound to hold that the reasonable expenses, necessarily incurred in reducing the intangibles to proceeds whereon the tax liens could and did attach, have just priority in payment over the unpaid taxes. That payment for petitioner's services as fixed by his contract of retainer was such an expense is not questioned. In *Matter of Lexow* v. *Tremaine* (252 App. Div. 307, affd. 277 N. Y. 657) an attorney's charging lien was accorded priority as regards the prior assignment of the chose, made as security for an indebtedness. There, as here, the lien upheld was for the services of the attorney of record, who rendered them in a litigation which produced the fund, and therein the assignee was represented by its other

attorneys throughout. While, in the *Lexow* case (*supra,* p. 308) it was pointed out that the prior assignment referred to the claim as " about to be filed and prosecuted " the decision was not based upon any relationship of attorney and client as between the petitioner and the assignee, but rather upon considerations of equity. In the instant matter the governmental lienors stood by knowing that litigation was necessary if the choses in action were to produce proceeds upon which the tax liens could attach. They acquiesced in the bringing and prosecution of the actions by the insured all the while knowing that petitioner's services were a necessary expense, and charged with notice of his lien therefor upon his client's causes of action and their resultant proceeds. It would indeed be inequitable to allow, as is called for, that the entire fund, produced by petitioner's services, be applied toward the payment of the tax liens, and leave the laborer go without his hire. Such would be an unwarranted disposal of his equitable ownership of the portion which amounts to his charging lien.

The order appealed from should be modified by determining the amount of petitioner's lien on the proceeds of the actions paid into court, to be 20% thereof and his disbursements, and directing payment thereof accordingly, and, as so modified, affirmed.

HILL, P. J., HEFFERNAN, RUSSELL and DEYO, JJ., concur.

Order modified on the law and the facts by fixing and determining the amount of petitioner's lien on the proceeds paid into court in settlement of the nineteen actions brought by Joel Newman against the various fire insurance companies, to be 20% thereof plus petitioner's disbursements, totaling the sum of $17,291.80, and directing payment thereof accordingly, and, as so modified affirmed, without costs.