S. Samuel Di Falco, J.
This is a motion pursuant to section 799 of the Civil Practice Act to vacate so much of a third-party subpoena, served upon the City of New York by the judgment creditor herein, as stays the payment by the City of New York of certain funds to the moving parties.
The application results from the following state of facts: On or about December 10, 1953 the judgment debtor, hereinafter referred to as Met, entered into a written contract with the City of New York to do certain school construction work for the price of $675,000. Pursuant to the provisions of that agreement the moving parties (surety companies) issued on behalf of Met joint payment and performance bonds in the penal sum of $675,000 conditioned upon Met’s faithful performance of the terms and conditions of its contract with the city and the payment of persons supplying labor and materials in connection with such contract. By reason of financial difficulties Met found itself unable to pay certain suppliers of labor and materials and notified the moving parties of that circumstance, requesting them to pay those obligations. For *494 that purpose, on May 4, 1956 Met duly assigned to them, in writing, all moneys due and payable to it from the city under the contract in question. The assignment was consented to in writing by the Board of Education and it was filed with the city treasurer and Board of Education on May 9, 1956. The sureties thereafter paid $49,805.20 pursuant to their bonds to certain suppliers of labor and material and in return received from certain of them assignments of mechanics’ liens, filed by them, totalling $30,241.86. The sureties have not received any reimbursement for the moneys so paid.
The judgment creditor recovered a judgment in the sum of $4,706.45 against Met on June 4, 1956, said amount being due for unpaid premiums on workmen’s compensation and public liability insurance policies. On June 6, 1956 the judgment creditor served the city with a third-party subpoena as a result of which the city has been prohibited from paying over to the moving parties a $7,500 warrant already drawn to their order pursuant to the aforesaid assignment from Met to the sureties.
The sureties ask that the part of the said subpoena prohibiting the payment of the warrant be vacated, in substance, upon the following grounds:
(1) The judgment creditor has no claim to the moneys in question because it' does not belong to the judgment debtor, having been assigned to them prior to entry of judgment.
(2) The interest of the judgment creditor is subordinate and inferior to that of the mechanics’ liens duly assigned to the sureties.
(3) The subrogation claim of the sureties to the fund involved is superior to any claim the judgment creditor may have to the money.
In opposition the judgment creditor contends:
(1) The sureties cannot prevail as assignees of the judgment debtor (Met) since they advanced no moneys to the latter.
(2) The only remedy of the sureties is to foreclose the mechanics ’ liens they hold.
(3) The sureties cannot prevail as subrogees for the reason that the judgment creditor’s claim arose out of the job for which the money was to be paid.
The Court of Appeals of this State has held that in this type of case, under the principle of subrogation, the surety’s rights are prior to those of claimants in the position of the judgment creditor (United States Fidelity & Guar. Co. v. Triborough Bridge Auth., 297 N. Y. 31; Scarsdale Nat. Bank & Trust Co. v. United States Fidelity & Guar. Co., 264 N. Y. 159; also, see, *495 [American] Lumbermens Mut. Cas. Co. of Illinois v. Great Atlantic Constr. Corp., 11 Misc 2d 491). In so holding the court in the Triborough Bridge Authority case, where the facts were very similar to those of this ease, quoting from the Scarsdale Nat. Bank case, said (p. 35): “Plaintiff succeeded — under principles of subrogation — to all rights which defendant Authority might have against the contractor, including that of withholding money due the contractor and of applying it to the payment of unsatisfied claims for labor and materials furnished. As this court (per Chañe, J.) clearly demonstrated in the Scarsdale case (supra), the equity in the surety’s favor arose at the time it gave its bond, although the right became available and enforcible when it carried out the contract’s provisionsit was there said (264 N. Y. at p. 164): ‘ However, we are here dealing- with the contract which contained the right to retain earned moneys and apply them on the cost of any completed work. To all rights under this contract the bonding company was subrogated. The equity in favor of the surety company arose at the time of the giving of its bond. The right became available when the surety company completed that work at a loss. (Prairie State Bank v. United Stales, 164 U. S. 227, at pp. 232, 237, 240.) The equitable lien arose at the time of the execution of the bond and was thus superior to the assignment. (Exchange State Bank v. Federal Surety Co., 28 Fed Rep. [2] 485, 488.) This is the reasoning and the rule adopted by the weight of authority. ’ ”
Under the principles there laid down I am of the opinion that the sureties’ rights in this case are clearly prior and superior to those of the judgment creditor since the equitable lien of the moving parties arose on December 10, 1953 when the bonds issued by them were executed whereas the judgment which is the basis of the third-party subpoena under attack was not entered until June 4, 1956.
I am also satisfied that the rights created by the -contractor’s assignment to the sureties were sufficient to bar the judgment creditor from any claim against the moneys due to be paid by the city under its contract. It is elementary that a judgment creditor can have no greater rights to the property involved than those owned by the judgment debtor at the time of the commencement of supplementary proceedings. (Matter of Eisenberg v. Mercer Hicks Corp., 199 Misc. 52.) The assignment herein created an equitable ownership in the sureties as to the fund payable for the construction work to be done by the contractor. Under such circumstances, as between the parties, the fund in equity passes immediately to the assignee, *496 so that if the assignor should thereafter collect the fund, it would be under obligation to pay it over to the assignee. Thus an attaching creditor stands no better than his debtor and if such debtor has no equitable interest in the property the creditor acquires nothing by an attachment. This is true whether the fund is in being or not at the time of the assignment. (Seamon v. Federated Films, 142 N. Y. S. 2d 324, 329, and cases therein cited.)
It further appears that within the purview of the Lien Law the judgment of the judgment creditor is not lienable, since it was not based upon the performance of labor or the furnishing of materials for construction. For that reason the rights of the sureties, arising from the mechanics’ liens of which they are the assignees, having paid the claims of the subcontractors for the labor and materials upon which the same are based, are prior to those of the judgment creditor, certainly to the extent of the amount paid out to the owners of the mechanics’ liens, which far exceeds the $7,500 held subject to the third-party subpoena. (See Corbin-Kellogg Agency v. Tasker, 248 App. Div. 58.)
In the light of the foregoing the fund in question is not subject to the judgment upon which the subpoena in question was issued and the motion is therefore granted. Settle order.