5 N.Y.2d 300 (1959)
In the Matter of the City of New York, Respondent, Relative to Acquiring Title to Real Property for the Washington Square Slum Clearance, Borough of Manhattan. United States of America, Appellant; Bernard W. Coblentz et al., Respondents.
Court of Appeals of the State of New York.
Argued October 7, 1958.
Decided March 5, 1959.
Paul W. Williams, United States Attorney for the Southern District of New York (Nicholas Tsoucalas and Elliot L. Hoffman of counsel), for United States of America, appellant.
Bernard W. Coblentz, in person, and Alfred D. Jahr for Bernard W. Coblentz, respondent.
Lester Nelson for New York University, respondent.
Norris Darrell, John F. Dooling, Jr., Caroline K. Simon and David G. Oringer for New York County Lawyers Association, amicus curiæ, in support of respondents' position.
Chief Judge CONWAY and Judges DESMOND, FROESSEL, VAN VOORHIS and BURKE concur with Judge DYE; Judge FULD dissents in a separate opinion.
*304 DYE, J.
On this appeal the respondent, an attorney, and the appellant Government are contesting the relative priority in payment of the attorney's fee for services rendered and the Government's lien for unpaid withholding taxes. The question posed is whether the attorney, by virtue of the assignment clause in his retainer contract, is a "purchaser" of "property" or "rights to property" within the meaning of section 6323 (formerly § 3672) of title 26 of the United States Code.
As part of its Washington Slum Clearance project, DP # 125, the City of New York condemned the fee of premises occupied under a leasehold by Tailored Contour, Inc. (hereinafter Tailored). As compensation for the taking of its trade fixtures, Tailored was awarded $5,750 which, with legal interest, a total of $6,056, the City Comptroller is holding, pending determination of priority in payment.
The petitioner Coblentz, an attorney, instituted this proceeding for an order declaring that his claim for an attorney's lien in the amount of $1,211.20 had priority over a judgment lien noticed by New York University, as project sponsor, for arrears in rent in the sum of $920 and a lien for withholding taxes due the United States Government in the sum of $8,436.78. The Special Term ruled that the liens should be paid in the following *305 order: First to the University, second to Coblentz and third to the Government, and directed the Comptroller to pay the claims in that order to the extent of the funds withheld. Upon appeal, the Appellate Division, First Department, unanimously affirmed and granted the Government permission to appeal to this court, certifying that a question of law is involved which ought to be reviewed.
It is undisputed that:
On March 8, 1954
Tailored retained the respondent Coblentz to appear for and to represent them in the condemnation proceeding and for their services "agree to pay, and do hereby assign to said BERNARD W. COBLENTZ for his services in the matter Twenty (20%) per cent of the award and interest that may be paid or awarded for the said property. [Trade fixtures] * * * plus disbursements", that
On August 5, 1955
Title vested in the City of New York on the entry of the order of condemnation (Administrative Code of City of New York, § B15-36.0);
On September 25, 1956
Final decree of condemnation was signed;
On May 23, 1956
The Bureau of Internal Revenue duly filed withholding tax lien in the sum of $8,436.78 viz.:

 Tax Period Assessment Date Amount of Assessment
 ---------- --------------- --------------------
 3-31-55 5-55 $ 1,549.76
 6-30-55 8-55 1,317.98
 9-30-55 11-55 2,059.21
 3-31-56 3,000.00
 Delinquent interest 509.83
 __________
 Total $ 8,436.78

On May 23, 1956
New York University, as a sponsor of the project, obtained a judgment in the Municipal Court, City of New York, against Tailored in the sum of $920, being the reasonable value of the use and occupation of the condemned premises (Administrative Code, § B15-37.0, subd. b).
*306 On May 28, 1956
New York University filed a notice of its judgment lien against Tailored with the Comptroller. Because of such filing, the City Comptroller retained the damage check due Tailored.
On January 28, 1957
Coblentz moved at Special Term, pursuant to section 475 of the Judiciary Law, to have his attorney's lien enforced and paid from the proceeds of the award, claiming that it had attached from the commencement of the condemnation proceedings and that he had a first lien on the proceeds to the amount agreed upon, which could not be defeated by the claims of others whose claims, if any, attached only to the balance. The Government appeared and cross-moved for an order declaring its tax lien.
In ruling that the Government's lien for taxes was subordinate to both the judgment for arrears in rental and the attorney's lien for services, the Special Term deemed that under State law the petitioner, by virtue of the assignment, had a property interest in the award as "purchaser" within the meaning of section 3672 (as it then was, now § 6323) of title 26 of the United States Code, and that, as to him, the Government's position was subordinate because its lien was not valid against a purchaser within the meaning of that section unless notice thereof had been filed as provided (Lien Law, § 240, National Refining Co. v. United States, 160 F.2d 951 [C. C. A., 8th Cir.]; Grossman v. City of New York, 188 Misc. 256; Matter of Astoria Blvd., 171 Misc. 1018; Government lien filed May 23, 1956, attorney's lien and assignment dated March 8, 1954). This ruling was in accordance with the long-established principle that an attorney's lien upon his client's recovery is a vested property right created by law and not a priority of payment.
By statute in New York (Judiciary Law, § 475) it is expressly provided:
"§ 475. Attorney's lien in action, special or other proceeding. From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, *307 decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien." (Emphasis supplied.)
It is to be noted that the statute gives an attorney a lien on the cause of action which attaches to the judgment from the commencement of the action.
Section 475, in substance, declares the common law. The origin of an attorney's lien, whether as retaining or as charging, is obscure, but in all events, irrespective of type, has been recognized and enforced by the courts from very early times (see Fourth Annual Report of N. Y. Judicial Council, 1938, p. 49; 7 C. J. S., Attorney and Client, § 210 et seq.; 5 Am. Jur., Attorneys at Law, § 208 et seq.). The underlying purpose at both common law and now, by statute, is to protect an attorney against the knavery of his client (Matter of Rosentover v. Weiss, 247 App. Div. 137, affd. 272 N.Y. 557; Goodrich v. McDonald, 112 N.Y. 157) and, being created by statute, does not require the giving of any notice in order to bring it into existence (Matter of Drake v. Pierce Butler Radiator Corp., 202 Misc. 935) for it is generally regarded as an equitable assignment to the attorney of the fund procured by his efforts to the extent of the amount of his lien (Matter of Herlihy, 274 App. Div. 342).
When, however, the right depends on contract, as it does here, the terms of the contract must be examined in light of the statute (Matter of Heinsheimer, 214 N.Y. 361).
Under this retainer contract the client, Tailored, agreed to pay "and do hereby assign" to said Coblentz for his services 20% of the award and interest. When that express language is read in light of the statute, the parties must be deemed to have intended to, and in fact did, accomplish an immediate transfer of a percentage interest in Tailored's cause of action against the city for the taking of its trade fixtures and which became effective at, as and of the time of the making and which amounted to a pro tanto assignment of the proceeds. In other words, the attorney by virtue of the assignment clause in the contract presently acquired a vested property interest in the award which he had "purchased" for a good and valuable *308 consideration, to wit: his services as rendered and to be rendered in the premises. He had title to "property and rights to property" (a cause of action, as we know, is property) which neither the client nor anyone claiming through or against him could subsequently disturb. By the same token, the measure of the client's "property and rights to property" (the cause of action) from the date of the retainer contract was the balance remaining after transfer to the attorney of his agreed share.
Title to property and right to property are exclusively a matter of State law (Ætna Cas. & Sur. Co. v. United States, 4 N Y 2d 639; United States v. Bess, 357 U. S. 51; United States Fid. & Guar. Co. v. Triborough Bridge Auth., 297 N.Y. 31; Fidelity & Dep. Co. v. New York City Housing Auth., 241 F.2d 142 [see Scarsdale Nat. Bank & Trust Co. v. United States Fid. & Guar. Co., 264 N.Y. 159, 163, 164]; Matter of United States Cas. Co. v. Met Contr. Corp., 11 Misc 2d 492; Matter of [American] Lumbermen's Mut. Cas. Co. v. Great Atlantic Constr. Corp., 11 Misc 2d 491; Vincent v. Matthews, 126 F.Supp. 102; Alabama-Tennessee Natural Gas Co. v. Lehman-Hoge & Scott, 122 F.Supp. 314; Royal Ind. Co. v. United States, 93 F.Supp. 891; Matter of Cummins Constr. Corp., 81 F.Supp. 193; Herrmann v. Rogers, 358 U. S. 332; Rogers v. Calumet Nat. Bank, 358 U. S. 331).
By Federal statute liens for taxes owing to the United States arise upon receipt by the Collector of the assessment list (U. S. Code, tit. 26, § 6322, formerly § 3671) but they attach only to "property and rights to property" belonging to the taxpayer (§ 6321). To quote a succinct comment by Judge MEDINA: "In adopting this legislation, the Congress did not create property interests on which a lien might be imposed; there is no suggestion that it authorized the federal courts to do so. On the contrary, it took for granted here, as it normally does in the tax law, the vital existence of state laws creating and maintaining various interests. The statute was fashioned to require the courts to determine for federal purposes whether those state-created interests are `property' or `rights to property.' That classification of interests is a federal question; the existence of the interests to be federally classified, however, is solely a question of state law." (Fidelity & Dep. Co. v. New York City Housing Auth, supra, p. 144.)
*309 As a generality, it may be said that the right of the Government to levy and collect taxes uniformly throughout the land may not be defeated by the State court rule or regulation (United States v. Vorreiter, 355 U. S. 15, revg. 134 Col. 543; United States v. White Bear Brewing Co., 350 U. S. 1010, revg. 227 F.2d 359; United States v. Colotta, 350 U. S. 808, revg. 224 Miss. 33; United States v. Scovil, 348 U. S. 218; United States v. New Britain, 347 U. S. 81; United States v. Kings County Iron Works, 224 F.2d 232; Aquilino v. United States, 3 N Y 2d 511).
A Government tax lien, however, is not always paramount. By Federal statute, it "shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the Secretary" (U. S. Code, tit. 26, § 6323, subds. [a], [b], formerly § 3672).
The courts below have ruled Coblentz to be a "purchaser" within the meaning of that section as indeed he was by State law, and that, accordingly, the only "property" or "rights to property" belonging to the taxpayer was the balance of the proceeds remaining after the attorney's retainer assignment had been satisfied in full. The client's interest thus amounted to no more than 80% of the proceeds remaining after satisfaction of the judgment held by New York University since the award was made subject to its judgment for arrears in rental.
The Government seeks reversal of the judgment appealed from on two grounds: lack of jurisdiction in the State court to determine the rights of the United States in the proceeds of the award, and that, if the State courts have jurisdiction, its determination was wrong.
The challenge to jurisdiction is on the ground of sovereign immunity which the Government asserts has never been waived in a matter of this sort and has not been waived here (Stanley v. Schwalby, 162 U. S. 255) and that it was not made a party to the proceeding or served with process therein and that jurisdiction was not conferred by the voluntary appearance of the United States Attorney since only Congress has the power to so consent (Minnesota v. United States, 305 U. S. 382; United States v. Shaw, 309 U. S. 495).
In the setting of this case, these contentions must be rejected. This is not a situation in which the Government is cast in the *310 role of a defendant being sued without its consent but, rather, that of a claimant to disputed funds. In intervening for the purpose of presenting its claim, the United States is an actor  voluntarily asserting a claimed right  and is not a defendant. In so acting, the Government suffers no impairment of its sovereignty by prosecuting such a claim in the appropriate forum where the funds are held (United States v. Bank of New York Co., 296 U. S. 463; Merryweather v. United States, 12 F.2d 407; cf. Moscow Fire Ins. Co. v. Bank of New York & Trust Co., 161 Misc. 903, affd. 253 App. Div. 644, affd. 280 N Y 286, affd. 309 U. S. 624). Since the enactment of section 316 of title 5 of the United States Code, an official of the Department of Justice, whenever required to attend to the interests of the United States, is authorized to appear in any suit pending in any of the United States courts or of any State court. The jurisdiction thus recognized is not defeated by failure to expressly follow the procedure laid down in section 2410 of title 28 of the United States Code. Subdivision (d) of that section has reference to the release of a lien against real or personal property so as to permit its sale and has no reference to the enforcement of an attorney's lien under section 475 of the Judiciary Law. An action brought pursuant to that section need not comply with the procedural directions prescribed in section 2410 of title 28 (Lavenburg v. Universal Sportwear, 92 F.Supp. 473; Matter of Meltzer v. Ceglia, 9 Misc 2d 464). Thus, it is manifest that the situs of the fund being in New York, its State courts have jurisdiction to determine its distribution.
As we turn to the merits, perhaps it would be well to again mention that in the court below the attorney's retainer contract and its assignment were treated as an immediate transfer of 20% of the client's cause of action which brought the attorney and his lien within the exception accorded to purchasers (U. S. Code, tit. 26, § 6323). When the taxpayer signed the retainer agreement, it effectively divested itself of a part of its cause of action; that since the Government's lien for taxes attaches by statute only to "property and rights to property" belonging to the taxpayer (§ 6321), only the unassigned balance was liable for the tax. Thus the pivotal question turns on who holds the "property and rights to property" liable for the tax rather than on priority in payment of conflicting claims.
*311 The appellant Government now says that such ruling is wrong for the reason that Coblentz was not a purchaser by virtue of the assignment clause within the meaning of section 6323; that all Coblentz obtained was a potential or contingent right conditioned on the making of an award  that under Federal tests his right was inchoate, and he had no more than a "mere caveat of a more perfect lien to come".
The Government relies on the recently decided Federal court case entitled United States v. Pay-O-Matic Corp. (162 F.Supp. 154; 256 F.2d 581). Pay-O-Matic, just as Tailored, was a lessee in possession of premises and the owner of trade fixtures taken by the City of New York in connection with the same Washington Square Slum Clearance project  by the same order in condemnation dated August 5, 1955. Subsequent to the making of that order, and
On November 18, 1955
Pay-O-Matic, by written agreement, retained Goldstein & Sons as attorneys to represent it in a suit against the city for the taking of its trade fixtures. Among other things, the agreement recited that "it [Pay-O-Matic] agrees to pay and hereby assigns to said attorneys twenty-five (25%) per-cent of any award and interest that may be made for trade fixtures contained in said property".
On November 22, 1955 Goldstein filed a notice of lien with the City Comptroller for his fee.
On December 6, 1955 the Government filed a lien for withholding taxes for the year 1955.
On June 27, 1956 the Government filed an amended lien for unpaid withholding and unemployment taxes for the same period totaling $11,822.42.
On August 22, 1956 a final decree was entered awarding damages to Pay-O-Matic in the sum of $4,569.28.
Thereafter, the United States commenced suit in the United States District Court, Southern District of New York, for payment of its tax lien and moved for summary judgment in its favor. Goldstein appeared in the action and cross-moved for summary judgment in his favor. In granting the Government's motion, RYAN, J., ruled that while section 475 of the Judiciary Law, and cases cited, gave an attorney a lien for services which *312 arise at the commencement of the suit and attached to the proceeds, he nonetheless applied the general principle expressed in United States v. Waddill Co. (323 U. S. 353) that priority in payment of a Government lien for unpaid taxes was "`always a federal question to be determined finally by the federal courts. The state's characterization of its liens, while good for all state purposes, does not necessarily bind this Court.' United States v. Acri, 348 U. S. 211, 213 * * * Whether attorney Goldstein's lien by state tests would be held to be choate, it is clear that under federal tests it is as compared to that of the Government inchoate. It was not established for the amount of the lien was contingent on the outcome of a trial in the state condemnation court to fix the amount of the award to be made to Pay-O-Matic for the property condemned. It was but a `caveat of a more perfect lien to come' (United States v. Scovil, 348 U. S. 218, 220 * * *) and is therefore subordinate to the federal tax lien; United States v. City of New Britain, 347 U. S. 81, 84". (United States v. Pay-O-Matic Corp., supra, pp. 155-156.)
On appeal, the United States Court of Appeals, 2d Circuit, affirmed April 28, 1958 without opinion (United States v. Goldstein, 256 F.2d 581) under authority of United States v. Ball Constr. Co. (355 U. S. 587) and certiorari was denied October, 1958 (358 U. S. 830).
In Waddill (supra) the United States claimed its lien for taxes was entitled to priority in payment over State and municipal claims and arrears in rental against an insolvent taxpayer. In allowing the Government a preference, the court pointed out that the other claimants, having failed to perfect their lien prior to the assignment for the benefit of creditors, could not invoke local rules and regulations even though valid for State purposes to defeat the Government. With this there can be no serious quarrel. We followed that general principle in Aquilino v. United States (3 N Y 2d 511). There, it also appeared that the Government had duly filed its tax lien before the plaintiffs had filed their notice (Lien Law, § 240, subd. 2). The plaintiffs sought to avoid this consequence by arguing that their lien dated back to the making of the contract for, under State law, funds received by a contractor from the owner are deemed trust funds (Lien Law, §§ 36-a, 13, subd. [7]), a contention *313 which had to be rejected for the very good and simple reason that the Government lien attached as soon as it satisfied the State's requirement as to filing first, which it so happened was first in point of time.
The Ball case (supra), relied on as authority in the Circuit Court, was an interpleader to determine priority of rival claims. There a subcontractor, in order to induce a surety to file a performance bond, assigned to the surety all sums due or to become due under the subcontract as collateral for any liability it might sustain through nonperformance of the subcontract and for any other liability to the surety not exceeding the penalty of the bond. The United States Supreme Court ruled that such assignment did not constitute the surety a "mortgagee" of those sums within the meaning of subdivision (a) of section 3672 of the Internal Revenue Code of 1939 (as amd. in present § 6323) which provides that a Federal tax lien shall not be valid as against any mortgagee until notice thereof has been filed. Here, again, there was lack of timely notice which could not be cured by resort to a State rule or regulation so as to defeat the Government's prior claim in point of time (cf. United States v. Security Trust & Sav. Bank, 340 U. S. 47).
At first glance, Pay-O-Matic would seem to be controlling and require a reversal. An examination of the authorities on which it was based suggests that it was an extension of the well-recognized "first in time, first in right" doctrine in the determination of priority in payment of conflicting claims. Here, there is a clear difference in this case and Pay-O-Matic. It is to be noted in the first instance that the cases were instituted in different courts under different law and to enforce different claims. Here, the attorney sued in the State court to enforce his retainer contract (Judiciary Law, § 475). The Federal Government intervened and demanded preference in payment of its lien for taxes. In point of time, the attorney's retainer antedated the condemnation order by over one year, that is, March 8, 1954 to August 5, 1955. The tax assessment was not made until May, 1955 through November, 1955, in point of time, over 14 to 21 months subsequent to the making of the retainer contract and which was the earliest time on which the taxpayer and the attorney could be said to have had notice that Tailored owed withholding taxes.
*314 The Government's lien for taxes was not filed until May 23, 1956, two years and two months after the attorney's retainer contract and after the attorney had fully performed the services necessary to create the fund. In point of time, then, the Government's claim was last. The tardiness of the Government in filing may not be excused by asserting sovereign paramountcy. To do so would be the reverse of the rule under which recovery had been allowed in Aquilino and Ball (supra).
By way of summary, it is well established that the laws of the several States, including the common law, as declared by the highest courts of such States, prevail upon and are enforced in the courts of the United States except where the Constitution, Treaties or Statutes of the United States otherwise require (Erie R. R. v. Tompkins, 304 U. S. 64). That case overruled and disapproved the contrary doctrine of Swift v. Tyson (16 Pet. [41 U. S.] 1). The determination of what constitutes property of a taxpayer on the date of the asserted lien by the Government is a matter of State law (Ætna and Bess, supra, and cases cited; Aquilino, supra, petition for certiorari granted, No. 132, Feb. 24, 1959, 27 U. S. Law Week 3231).
Compensation for private property taken for public use is to be determined by the procedures established for the exercise of the sovereign power of eminent domain, subject only to certain constitutional limitations not here involved (Dohany v. Rogers, 281 U. S. 362). Under the New York City Administrative Code, title vests in the city on the entry of the condemnation order (§ B15-36.0). By section B15-37.0, the value of the property taken is reduced by the reasonable value of the use and occupancy from the date the property was condemned until actual payment of the award. Here the University, as sponsor, had a claim for such use and occupancy which was confirmed by a judgment entered and filed the same day the Government lien was filed. Furthermore, as the lower courts have properly ruled, the award was made subject to the payment of that judgment as provided by the Code (supra) which together constituted it a first lien on the proceeds of the award. At most, the owner had right and title to the award as made, less the $920 judgment due the University, payment of which, in the first instance, was made subject to the judgment. Of the balance the attorney had acquired, by prior assignment, *315 20% of the award and interest which took effect upon the commencement of the action. The "property and rights to property" which remained was all that the taxpayer had to which the Government lien for taxes could attach in any event.
The order appealed from should be affirmed, with costs.
FULD, J. (dissenting).
In my view, the lien of the United States for unpaid taxes is superior both to the attorney's lien of the respondent Coblentz and the judgment lien of the respondent New York University.
Although "a new trend" may be portended by Commissioner v. Stern, 357 U. S. 39 (see American Bar Assn., Proceedings of Section of Real Property, Probate & Trust Law, Part II [1958], p. 81), the cases actually decided by the Supreme Court point the conclusion that the Government's tax lien is superior to the lien of an attorney on a condemnation award where such award was made after a notice of tax lien had been filed against the taxpayer-client. (See United States v. Ball Constr. Co., 355 U. S. 587; United States v. Scovil, 348 U. S. 218; see, also, United States v. Pay-O-Matic Corp., 162 F.Supp. 154, affd. 256 F.2d 581, cert. denied 358 U. S. 830; Aquilino v. United States, 3 N Y 2d 511, cert. granted Feb. 24, 1959, 27 U. S. Law Week 3231.)
The respondent Coblentz and his client, Tailored Contour, Inc., entered into a retainer agreement whereby the latter authorized the respondent to act for it in the condemnation proceedings and agreed to pay him, and "do hereby assign" to him, for his services, 20% of "the award and interest that may be paid" for the property to be taken. As is manifest, no provision of the agreement transferred title or possession to any property and, just as clearly, there was no vendor-vendee relationship created between the respondent and his client, as those terms are ordinarily understood. The respondent agreed to represent the client and to perform legal services, the fee to be paid to him, uncertain in amount, being strictly contingent, payable only if and after an award was made. Indeed, the client was free, despite the retainer agreement, to terminate the attorney-client relationship at any time he chose. (See Matter of Weitling, 266 N.Y. 184.) At best, therefore, the respondent obtained a potential and inchoate interest, for he had the right neither to receive any money nor to proceed against the property *316 involved in the condemnation proceeding unless and until an award was made. (See, e.g., United States v. Acri, 348 U. S. 211; United States v. Scovil, 348 U. S. 218, supra.) And, beyond all this, there was the possibility that some eventuality might prevent him from ever obtaining even a part of the award.
All of these factors negate any inference that the assignment relied upon constituted a purchase or stamped the respondent a purchaser within the meaning of the Internal Revenue Code. (See United States v. Pay-O-Matic Corp., 162 F.Supp. 154, affd. 256 F.2d 581, cert. denied 358 U. S. 830, supra; United States v. Ball Constr. Co., 355 U. S. 587, supra; United States v. Scovil, 348 U. S. 218, 221, supra; United States v. Hawkins, 228 F.2d 517, 518-519.) The Pay-O-Matic case, also involving priority between an attorney's lien on a condemnation award and a federal tax lien, is indistinguishable from the case before us. In reaching its conclusion, that the attorney's lien was subordinate to the lien of the Government, the court wrote (162 F.Supp. 156):
"Whether attorney Goldstein's lien by state tests would be held to be choate, it is clear that under federal tests it is as compared to that of the Government inchoate. It was not established for the amount of the lien was contingent on the outcome of a trial in the state condemnation court to fix the amount of the award to be made to Pay-O-Matic for the property condemned. It was but a `caveat of a more perfect lien to come' (United States v. Scovil, 348 U. S. 218, 220 * * *) and is therefore subordinate to the federal tax lien; United States v. City of New Britain, 347 U. S. 81, 84".
It is likewise my opinion that the judgment lien of New York University is subordinate to the tax lien. The Government filed its notice of tax liens on May 23, 1956, both in the office of the City Register, the place designated by section 240 of this state's Lien Law, and with the City Comptroller. The University obtained its judgment against the taxpayer, Tailored Contour, on the same day, May 23, 1956, but such judgment was neither filed nor docketed, as required, in the office of the Clerk of the County of New York, until June 5. Since the *317 University could not have a lien against the fixtures belonging to the taxpayer until its judgment was docketed (Civ. Prac. Act, §§ 509, 510), it is clear that the Government's lien for taxes was prior in time. Once the federal tax lien is properly filed, no subsequently recorded lien or claim may prevail against it. (See United States v. Colotta, 350 U. S. 808; United States v. New Britain, 347 U. S. 81, 84.)
The order appealed from should be reversed and the Comptroller directed to pay to the United States, in partial satisfaction of its tax liens, the moneys heretofore awarded to Tailored Contour, Inc.
Order affirmed.