OPINION OF THE COURT
Abraham G. Gerges, J.
NYCTL 1998-1 Trust and the Bank of New York, as collateral agent and custodian (collectively referred to as movants or the trust), seek an order compelling the City of New York to release and turn over to them the amounts due and owing under a tax lien recorded against block 7561, lot 20 (the property), from any final award issued herein.
Facts and Procedural Background
The City commenced the instant condemnation proceeding as part of the Mill Creek Phase 1, Staten Island Bluebelt System. As is relevant herein, included in the taking were the subject property and six other parcels owned by Frank J. Vigliarolo and Joseph Vigliarolo (claimants). Claimants filed a timely notice of claim for the property. Movants’ predecessor acquired a tax lien on the property for unpaid real estate taxes and water/sewer charges by tax lien certificate dated May 22, 1997 (the tax lien certificate) in the amount of $1,460.51 (the tax lien). A notice of claim was filed prior to the assignment of the tax lien to the trust by assignment and assumption agreement dated June 1, 2001. Title to the property vested in the City on July 31, 1998.
Thereafter, an authorization for an advance payment dated December 9, 1999 was made by the City pursuant to Eminent Domain Procedure Law §§ 303 and 304 and Administrative Code of the City of New York § 5-328. In accordance therewith, on November 14, 2001, an advance payment in the amount of $23,000, plus interest in the amount of $4,000, was made by the City for the seven properties owned by claimants. At that time, satisfaction of the tax lien was waived until payment of the final award.
On January 14, 2004, the trust filed a motion seeking an order authorizing the City to release and turn over the advance *898 payment to them. Claimants objected, asserting that the advance payment had already been released to them and that payment of the tax lien had been waived until the final award was made. Claimants also alleged that their counsel’s charging lien had priority over the tax lien and that the 18% interest rate on the tax lien sought by movants was in excess of that allowed by law. On June 18, 2004, that motion was withdrawn without prejudice.
Thereafter, an authorization for a supplemental advance payment dated June 23, 2004 was issued by the City. Pursuant thereto, a supplemental advance payment of $32,000 was issued. On January 14, 2005, the trust moved for an order authorizing the City to release and turn over the supplemental advance payment. Claimants again objected, raising the same arguments interposed in opposition to the earlier motion. On March 18, 2005, the trust withdrew its motion without prejudice to their right to seek payment from the final award. This motion followed.
Enforceability of the Tax Lien
Movants’ Contentions
In support of their motion, the trust argues that, as is relevant herein, the tax lien certificate provides (U 12):
“[A] 11 of the City’s right, title and interest in and to all real property taxes, assessments, sewer rents, sewer surcharges, water rents and any other City charges that have prior to the date hereof become a lien against those certain parcels of real property (each, a ‘Property’) located in the Borough of Staten Island and County of Richmond and listed on Schedule A hereto by block and lot number, plus all interest and penalties accrued thereon to the date hereof, plus a surcharge equal to five percent (5%) of the sum of all such amounts, in the grand total amount (the ‘Tax Lien Balance’) set forth with respect to such Parcel on Schedule A hereto, plus interest accruing thereon at the rate of eighteen percent (18%) per annum, compounded daily.”
The trust argues that, pursuant to the above-quoted language and in accordance with Administrative Code §§ 11-224 and 11-225, interest accrues on the tax lien that it holds at the rate of 18% per annum, compounded daily, from the date that the lien was sold by the City, or May 22, 1997, through the date that it *899 is paid.[1] Movants further argue that the City is required to collect interest on delinquent taxes until they are paid, the amount of which is controlled by statute, and that the amount of interest that must be paid cannot be varied by equitable considerations.
Claimants’ Contentions
Claimants oppose the release of funds in the amount demanded by the trust, arguing that while they do not dispute that interest on the tax lien continues to accrue until the lien is paid, movants are only entitled to recover interest at the statutory rate of six percent that the City is required to pay pursuant to General Municipal Law § 3-a (2) after title vested in the City.[2] Claimants further contend that their position is supported by that portion of Administrative Code § 11-335 which provides that the same rules of practice applicable to an action to foreclose a mortgage apply to an action to foreclose a tax lien.[3]
The City
The City maintains that interest on the tax lien properly continues to accrue at 18% per annum until the tax lien is paid as is mandated by Administrative Code § 11-224 and as is provided in the tax lien certificate, and not at six percent, as provided in the General Municipal Law.
The Law
In addressing the issues to be determined herein, the court first recognizes that “[t]he right of the City to satisfy its lien for taxes against an award in condemnation is not one conferred upon it by the awardee, but is derived from the law” (City of New York v Idlewild Beach Co., 182 Misc 205, 208 [1943], affd 182 Misc 213 [1944], citing Matter of City of New York [Hammel Boardwalk Corp.], 288 NY 51 [1942]; Muldoon v Mid-Bronx Holding Corp., 287 NY 227 [1942]; Matter of City of New York, *900 266 NY 26 [1934], rearg denied 266 NY 505 [1935]; Utter v Richmond, 112 NY 610 [1889]).
As is relevant to the instant dispute, New York City Charter § 1520 provides that “[t]he commissioner shall charge, receive and collect the interest and penalties upon taxes on real estate not paid when due and payable in such manner and at such rates as shall be provided by law . . . .” Similarly, Administrative Code § 11-302 provides that “[t]he commissioner of finance shall not reduce the rate of interest upon any taxes or assessment below the amount fixed by law.” Hence, it is well settled that interest continues to accrue on all delinquent taxes through the date of payment:
“The City Collector was required to collect interest on delinquent taxes, assessments and water rents [to] the date of payment and account to the city for the interest collected as part of the delinquent tax liens (Administrative Code, §§ 173-1.0, pp. 90, 91; 415[1]-17.0, pp. 221, 222; 415[1]-12.0, p. 218; Charter, §§ 173, 415, 1i 1). Although the tax statutes recognize that the city may take property by eminent domain, there is no provision for the cessation of interest upon the happening of any such event. On the contrary, reduction of interest upon any taxes, assessments and water rents below the amount fixed by law is forbidden (Administrative Code, § 415[l]-8.0, p. 217), and all taxes, assessments and water rents and interest thereon constitute liens until paid (Administrative Code, § 415[1]-7.0, p. 217).” (Matter of City of New York [Hammel Boardwalk Corp.], 288 NY at 57; see also Matter of County of Rockland [Kohl Indus. Park Co.], 172 AD2d 607, 609 [1991] [there is no reason in law or equity why interest should not be awarded to the condemnor upon the portion of the condemnation award to which the equitable lien attached].)
Moreover, it is equally well settled that upon the vesting of title in the City in a condemnation proceeding, all liens are extinguished and the lienholder must look to the award to satisfy any outstanding liens.
“[U]pan the vesting of title in a condemnation proceeding, all lien interests in the subject property by virtue of mortgages, unpaid taxes, or unsatisfied judgments, are extinguished (see, Matter of County of Nassau [Gelb—Siegel], 24 NY2d 621, 626; Copp v *901 Sands Point Marina, 17 NY2d 291, 293; Muldoon v Mid-Bronx Holding Corp., 287 NY 227; Matter of Barber [State Comptroller], 274 App Div 712; Irving Trust Co. v Hughes, 239 App Div 74, 76). However, substituted in their place are equitable liens against the condemnation award to the extent of each lien and interest thereon as of the date title vested (see, Matter of County of Nassau [Gelb—Siegel], supra; Copp v Sands Point Marina, supra).” (County of Rockland [Kohl Indus. Park Co.], 172 AD2d at 609; accord Fischer v MMRR Constr., 204 AD2d 681, 682 [1994] [when land is taken for public use, the damages awarded are to take the place of the land in respect to all the rights and interests which were dependent upon and incident to it], appeal denied 91 NY2d 804 [1997]; City of New York v Idlewild Beach Co., 182 Misc at 208 [the lien upon the land for taxes and water rents shifts to the condemnation award once such award is made].)
Discussion
As the above cases and provisions of the Administrative Code make clear, and as claimants admit, they are responsible for delinquent taxes due on the property, with interest, until the taxes are paid. The issue of the amount of interest payable during the pendency of a condemnation proceeding on a tax lien that was sold by the City is not specifically addressed by the provisions of the Administrative Code, nor has this specific issue been resolved by case law. Although movants rely upon Matter of City of New York (Hammel Boardwalk Corp.) (288 NY 51 [1942]) to support their assertion that interest continues to accrue at the rate of 18% until the delinquent taxes are paid, a review of that case reveals that “[t]he appeal by the city [was] limited to a determination of the question as to whether it may collect interest on the unpaid taxes, assessments and water rents from the date of vesting of title to . . . the date when they were paid.” (Id. at 56.) Hence, the court therein did not address or resolve the question of the rate at which interest accrues.
Applying the above-discussed law, however, the court finds that the rate of interest payable on movants’ tax lien after title vested in the City is six percent, as mandated by General Municipal Law § 3-a (2). As a threshold issue, it is beyond dispute that upon vesting of title in the City, the tax lien was extin *902 guished (see Administrative Code § 5-335;[4] County of Rockland [Kohl Indus. Park Co.], 172 AD2d at 609; Matter of City of New York, 49 Misc 2d 527, 528 [1966]). Further, the Administrative Code provides that a person who purchases a tax lien stands in the same shoes as the City (Administrative Code § 11-332 [a]).[5] The Administrative Code also provides that the same rules of practice applicable to an action to foreclose a mortgage apply to an action to foreclose a tax lien (Administrative Code § 11-335; see generally Weiss v Stone, 129 NYS2d 525 [1954]).
Further, the trust filed a notice of claim in the instant condemnation proceeding and now seeks an order directing the payment of its lien from the funds awarded to claimants herein. It is beyond dispute that when a mortgagee voluntarily elects to substitute the condemnation award for personal liability under the note, the award is substituted for the lien and, after title vested in the City, the mortgagee is limited to the statutory interest rate paid by the City on the award, i.e., six percent pursuant to General Municipal Law § 3-a (2) (see e.g. Fliegel v Manhattan Sav. Bank, 296 NY 214, 219 [1947] [since the lien of the mortgage upon the land taken was destroyed when title vested in the condemnor, the mortgagee was awarded a right to resort to the compensation which must be paid to the owner of the land; since the obligation of the sovereign had been substituted for the contractual obligation in the bond, the mortgagee was entitled only to such interest as the sovereign may be required by statute to pay to the owner after vesting of title]; accord Levine v State of New York, 106 AD2d 709 [1984]; Matter of Bond & Mtge. Guar. Co., 266 App Div 979 [1943]; 362 Washington St. Corp. v Peninsula Natl. Bank, 53 Misc 2d 499 [1967]; Security Natl. Bank of Long Is. v Sabatelli, 38 Misc 2d 503 [1962]).
While the interest rate payable may be increased by agreement between the parties, claimants were not parties to the tax *903 lien certificate and therefore did not agree to the increased interest rate provided therein (see generally 362 Washington St. Corp., 53 Misc 2d at 500 [neither the Administrative Code nor the General Municipal Law bars agreements between a mortgagor and mortgagee to pay an interest rate different than that provided by statute]; Matter of City of New York [Brooklyn Bridge], 46 Misc 2d 558, 563 [1965] [contract that specifically provided for the contingency of condemnation and the apportionment of the award in such event was enforceable], affd 24 AD2d 710 [1965]). Accordingly, to the extent that the tax lien certificate can be deemed to set forth a different rate of interest than that to which the City is entitled pursuant to the provisions of the controlling law, it is invalid (Granada Bldgs. v City of Kingston, 58 NY2d 705, 708 [1982] [municipal contracts which violate express statutory provisions are invalid], rearg denied 58 NY2d 825 [1983]; see also TSNB, Inc. v City of New York, 127 Misc 2d 285 [1985]).
Finally, the court is constrained to adhere to the above-discussed statutory provisions and case law precedent that determine the rate at which interest must be paid, and is without power to vary or modify them (see e.g. Matter of City of New York [Hammel Boardwalk Corp.], 288 NY at 58 [if any additional relief was to be granted to the taxpayer with regard to the interest rate that was imposed, it must be granted by the Legislature since such relief cannot be granted by the courts]; TSNB, 127 Misc 2d 285 [1985] [agreement between taxpayer and city could not be construed so as to permit the city to waive and/or to reduce the full interest due on unpaid taxes until the date of payment]; City of New York v Idlewild Beach Co., 182 Misc at 212 [tax liens are only paid and discharged upon payment of the principal and interest as provided in the Administrative Code and regardless of equitable considerations, the court is without power to vary or modify these statutory provisions]).
Accordingly, interest on movants’ tax lien is payable at the rate of 18% from May 22, 1997, the date of the tax lien certificate, through July 30, 1998, and at the rate of 6% from July 31, 1998, the date that the City took title, through the date that the tax lien is paid. Further, movants’ request that the amount due be paid from the funds awarded to claimants as a final payment herein is granted, to the extent that such funds are available (see e.g. County of Rockland [Kohl Indus. Park Co.], 172 AD2d at 609 [by operation of law, the property taxes due and owing to the condemnor were properly deducted from the condemnation award]).
*904 Priority of the Tax Lien
Contentions of Movants and the City
Movants and the City argue that pursuant to Administrative Code § 11-301,[6] New York City Charter § 1519,[7] and Real Property Tax Law § 102 (21)[8] and § 1104 (2),[9] the tax lien has priority over all other liens filed against the property, with the exception of current real estate taxes. In so arguing, the City relies upon three affirmations, two from title clearance officers and one from counsel, in which each alleges that “[i]t is the policy of the Law Department that waiver of objections to title until final is a discretionary practice and is only considered where the claimant or claimant’s counsel specifically requests that the City allow such waiver.”[10] The City further asserts that *905 such waiver would be granted only if the amount of the subject lien were small in comparison to the amount of the anticipated award. Further, claimants knew or should have known that the tax lien would have priority over any attorneys’ lien that may exist and that implicit in the agreement to waive payment of the tax lien until final payment “was the understanding that the Tax Lien would take priority and be paid either prior to the issuance of a Final Award, or paid first from any Final Award funds.”
Movants and the City conclude that had claimants paid the delinquent taxes to the trust from the first advance payment, instead of waiving payment until resolution of the dispute concerning the value of the property, there could be no argument that the attorney’s charging lien has precedence since no lien existed at that time. Finally, in requesting such a waiver and agreeing that the trust would be paid from the final award, as is indicated on the objection sheet, claimants should be estopped from asserting that the trust should not be paid in full.
Claimants’ Contention
In opposition, counsel for claimants argues that the City, not the claimants, was responsible for waiving payment of the tax lien from the two previously made advance payments. Counsel further argues that any such final award should be subject to their attorneys’ charging lien, which they assert has priority over the tax lien.
*906 The Law
It is well established that Judiciary Law § 475, which codifies the common-law right to an attorneys’ lien, “creates ‘an equitable assignment to the attorney of the fund procured by his efforts to the extent of the amount of his lien’ ” (Marsano v State Bank of Albany, 27 AD2d 411, 413 [1967], appeal dismissed 23 NY2d 1018 [1969], quoting Matter of City of New York [United States of Am.—Coblentz], 5 NY2d 300, 307 [1959], cert denied sub nom. United States v Coblentz, 363 US 841 [1960], citing Matter of Herlihy, 274 App Div 342 [1948]). “[T]he statute gives an attorney a lien on the cause of action which attaches to the judgment from the commencement of the action” (Matter of City of New York [United States of Am.—Coblentz], 5 NY2d at 307 [emphasis omitted]). “ ‘[B]ecause a cause of action is a species of property, an attorney acquires a “vested property interest” in the cause of action at the signing of the retainer agreement and thus a “title to ‘property and rights to property’ ” ’ ” (Matter of Dresner v State of New York, 242 AD2d 627, 628 [1997], quoting LMWT Realty Corp. v Davis Agency, 85 NY2d 462, 467 [1995], quoting Matter of City of New York [United States of Am.—Coblentz], 5 NY2d at 307-308). Accordingly, since it is the attorneys’ efforts that create the fund to which a prior existing lien may attach, an attorneys’ lien has priority over a tax lien (see e.g. LMWT Realty, 85 NY2d at 465; Matter of Herlihy, 274 App Div 342 [1948]; Matter of Dresner v State of New York, 242 AD2d at 628; cf. NYCTL 1996-1 Trust v Weber, 292 AD2d 576 [2002] [since the appellant’s services did not create the fund upon which the plaintiffs’ tax liens attached, equitable principles did not require that the charging lien take precedence]).
Discussion
If the court were to apply the above-discussed general rules, counsel’s charging lien would have priority over movants’ tax lien. The instant case, however, is distinguishable. Claimants herein have already accepted two advance payments. At the time that each payment was made, current counsel represented claimants. Each of the two payments, one in the amount of $27,000 and the other in the amount of $32,000, was more than sufficient to have satisfied movants’ lien in full. Moreover, upon tendering both payments, the City waived payment of the tax lien until final payment.
Accordingly, inasmuch as counsel participated in claimants’ acceptance of the funds previously tendered, counsel will not *907 now be permitted to argue that its lien is superior to the tax lien. In so holding, the court is guided by a case having some similarities to facts at issue herein (Daley v Daley, 230 AD2d 182 [1997], appeal dismissed 91 NY2d 866 [1997], appeal denied 93 NY2d 810 [1999]). Therein, the Appellate Division, First Department, held that a defendant husband’s attorneys’ charging liens as to the proceeds of his recovery in an action against his former employer would not take precedence over the lien as to the same proceeds expressly given to the plaintiff wife pursuant to the parties’ settlement agreement and divorce judgment, where the same attorneys represented defendant at various times in both actions. In so holding, the court noted that “[n]o charging hen asserted here can take priority over plaintiffs lien where the attorneys asserting the liens either signed, negotiated or were fully aware of the settlement that included the express provision as to the disposition of the first. . . award to plaintiff before any other third party” (id. at 188 [emphasis omitted]; see also Marsano, 27 AD2d at 413-414 [by his action and participation in the stipulation of settlement, respondent attorney waived his right to an attorney’s charging lien that would be superior to the lien of the government for withholding taxes due by respondent’s client, since counsel’s actions in having executed the stipulation and receiving the funds in question with the stated specific conditions attached delayed the creation of any possessory or real interest by the client; where an attorney received property for a specific purpose, he must carry out that purpose irrespective of any lien which he might have otherwise]).
Conclusion
Movants’ motion is granted only to the extent of directing that the City pay movants the money due and owing to them pursuant to the tax lien certificate, with interest payable at the rate of 18% from May 22, 1997 through July 30, 1998, and at the rate of 6% from July 31, 1998 through the date that the tax lien is paid, from the final award, if any, that is directed in this condemnation proceeding. Movants’ lien shall take priority over the charging lien of claimants’ attorneys.

. Claimants do not dispute that the rate of interest payable on a tax lien pursuant to the Administrative Code is 18% per annum, but argue that this rate is inapplicable after title to a parcel of property vests in the City in a condemnation proceeding.

. General Municipal Law § 3-a (2) provides, in relevant part, that “[t]he rate of interest to be paid upon any judgment or accrued claim against the municipal corporation arising out of condemnation proceedings . . . shall not exceed six per centum per annum.”

. Administrative Code § 11-335 provides, in pertinent part, that “[e]xcept as otherwise provided in this chapter an action to foreclose a tax lien shall be regulated by the provisions of the civil practice law and rules and by all other provisions’ of law, and rules of practice applicable to actions to foreclose mortgages on real property.”

. Administrative Code § 5-335 (a) provides, in pertinent part, that:
“Where the whole of any lot or parcel of real property, under lease or other contract, shall be taken, all the covenants, contracts and engagements between landlord and tenant or any other contracting parties touching the same, or any part thereof, upon the vesting of title in the city, shall cease and determine and be absolutely discharged.”

. Administrative Code § 11-332 (a) provides that “[a]ny purchaser of a tax lien or tax liens shall stand in the same position as the city and shall have all the rights and remedies that the city would have had if the tax hen or tax liens had not been sold.”

. As is relevant herein, Administrative Code § 11-301 provides that:
“All taxes and all assessments and all sewer rents, sewer surcharges and water rents, and the interest and charges thereon, which may be laid or may have heretofore been laid, upon any real estate now in the city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges.”

. As is relevant herein, New York City Charter § 1519 (2) provides that “[a]ll taxes shall be and become liens on the real estate affected thereby and shall be construed as and deemed to be charged thereon on the respective days when they become due and payable, and not earlier, and shall remain such liens until paid.”

. Real Property Tax Law § 102 (21) provides that “ ‘[t]ax lien’ means an unpaid tax, special ad valorem levy, special assessment or other charge imposed upon real property by or on behalf of a municipal corporation or special district which is an encumbrance on real property, whether or not evidenced by a written instrument.”

. Real Property Tax Law § 1104 (2) provides that:
“The provisions of this article shall not be applicable to a county, city or town which: (i) on January first, nineteen hundred ninety-three, was authorized to enforce the collection of delinquent taxes pursuant to a county charter, city charter, administrative code or special law; (ii) adopted a local law, no later than July first, nineteen hundred ninety-four, providing that the collection of taxes in such county, city or town shall continue to be enforced pursuant to such charter, code or special law, as such charter, code or special law may from time to time be amended; and (iii) filed a copy of such local law with the state board no later than August first, nineteen hundred ninety-four.”

. In its affirmation, the City also argues that the court should issue and order:
“[Providing that before payment of funds from any Final Award issued in this action is made to either the NYCTL 1998-1 or to claimants, all other debts due and owing to the City with respect to the [subject property] for real estate taxes, assessments, sewer *905 rents, water charges and use or occupancy charges, are to be paid from such Final Award to the City with priority.”
The court will not consider this request for relief, however, inasmuch as it was not demanded by movants, nor was it raised by the City in a notice of motion or cross motion (see generally CPLR 2214, 2215; Chun v North Am. Mtge. Co., 285 AD2d 42 [2001] [the court was without jurisdiction to grant the relief afforded to defendants where there was an absence of a notice of cross motion or any other notice to plaintiff that she would be required to respond to a motion to dismiss]; Bauer v Facilities Dev. Corp., 210 AD2d 992 [1994] [affidavits submitted in opposition to defendants’ motions were insufficient to constitute a cross motion]; Guggenheim v Guggenheim, 109 AD2d 1012 [1985] [it was not sufficient to demand relief in opposing affidavits or in a memorandum; an outright notice was required to avoid surprise to the original movant]; Braver v County of Nassau Off. of Admin. Servs., 67 Misc 2d 120 [1971] [an affidavit in opposition to a motion is not sufficient to constitute a cross motion]). Moreover, the entry of such an order would be premature in that the City fails to apprise the court or the other parties herein of the amount of money that it claims is due and owing, particularly since the amount of the monies already due is contested by the parties.