250 F.3d 171 (2nd Cir. 2001)
 BUTLER, FITZGERALD & POTTER, A PROFESSIONAL CORPORATION, APPELLANT,
v.
SEQUA CORPORATION AND SEQUA CAPITAL CORPORATION, PLAINTIFFS-APPELLEES,
GBJ CORPORATION, TOPAZ CAPITAL CORPORATION AND JEFFREY J. GELMIN, DEFENDANTS-APPELLEES.
 Docket No. 00-7025
August Term, 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued September 25, 2000
May 17, 2001
 
 Butler, Fitzgerald & Potter, a professional corporation, appeals the December 22, 1999 order of the United States District Court for the Southern District of New York (Batts, J.) denying its motion to intervene as of right to protect its charging lien after it was discharged as counsel in an underlying action.
 
 
 1
 Affirmed.[Copyrighted Material Omitted]
 
 
 2
 Thomas Butler, New York, New York (Raymond Fitzgerald, Butler, Fitzgerald & Potter, New York, New York, of counsel), for Appellant.
 
 
 3
 Brooks R. Burdette, New York, New York (Schulte Roth & Zabel LLP, New York, New York, of counsel), for Plaintiffs-Appellees.
 
 
 4
 James C. Jones, New York, New York (Charles B. Manuel, Jr., Law Offices of Manuel & Jones, P.C., New York, New York, of counsel), for Defendants-Appellees.
 
 
 5
 Before: Cardamone, Jacobs, and Sack, Circuit Judges.
 
 Cardamone, Circuit Judge
 
 6
 During the course of protracted litigation, one party discharged the law firm that had been representing it, and replaced it with two solo practitioners. Prior to its discharge, the law firm obtained a $2.9 million charging lien that will be extinguished absent a favorable disposition for its former client. It moved therefore to intervene in the continuing litigation as a matter of right. The district court denied the motion.
 
 
 7
 This appeal from the denial of that motion raises several thorny issues: whether a discharged lawyer who has a charging lien it believes is in jeopardy by ongoing litigation possesses an interest justifying intervention as of right in that litigation; whether the discharged attorney's interests are adequately represented in the ongoing litigation; and whether the former attorney moved timely to intervene. A lawyer, like a laborer, is of course worthy of his hire and is entitled to be paid for his work. Yet, since the attorney/client relationship rests on a foundation of trust and confidence, when a client loses confidence in counsel, public policy generally demands that the client have the prerogative to terminate the relationship at any time, without cause.
 
 
 8
 Although choosing between these competing notions is not required to resolve this appeal -- resolution of the other issues will resolve the case -- the conflicting policies presented by these competing notions nonetheless give context to the discussion that follows.
 
 BACKGROUND
 
 9
 The underlying dispute in this case is between GBJ Corporation, formerly represented by the professional corporation Butler, Fitzgerald & Potter (Butler, law firm, or appellant) and Sequa Corporation. That dispute arose when Sequa allegedly breached a consulting contract. Under the consulting agreement, GBJ Corporation was to provide consulting services to Sequa on the use of leveraged lease transactions for Sequa to shelter its tax liability. The main suit has been litigated before the district court for the better part of nine years, and now reappears before us following the denial of Butler's motion before the district court to join the suit as a party in its own right. The sole issue is whether the Butler law firm -- GBJ's former counsel in its action against Sequa -- may intervene in the suit to protect its asserted interest in the outcome.
 
 
 10
 Three years after Butler served the initial complaint upon Sequa on behalf of GBJ, and in the midst of trial, on April 17, 1995 GBJ dismissed Butler as counsel. In June of that year a magistrate judge determined that the dismissal was without cause and, pursuant to New York law, see N.Y. Judiciary Law § 475 (McKinney 1983), fixed a charging lien in the amount of $2,934,695.33 in favor of Butler upon any recovery GBJ had in its action against Sequa. The charging lien is the subject matter of Butler's appeal.
 
 
 11
 After relieving Butler as lead counsel, GBJ retained two solo practitioners, Charles Manuel, Esq. (Manuel) and James Jones, Esq. (Jones), who tried the case before the district court for 51 days after Butler's dismissal, eventually procuring a sizable verdict for their client on the breach of contract claims. See Sequa Corp. v. Gelmin, No. 91 Civ. 8675, 1996 WL 745448, at *77-78 (S.D.N.Y. Dec. 31, 1996). Attorneys Manuel and Jones subsequently appeared before us when both Sequa and GBJ appealed portions of the district court's decision on the merits, and have since served as GBJ's attorneys of record after we vacated those portions of the district court's judgment relating to the calculation of GBJ's damages (tax recapture issue) and the fiduciary obligations of GBJ's president to Sequa (fiduciary duty issue). See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 150 (2d Cir. 1998). The litigation of the remanded issues continues to date.
 
 
 12
 Butler contends that a series of incidents indicated its charging lien was in jeopardy. It says that in late 1998, following our August 20, 1998 remand, the newly retained counsel for GBJ contacted the Butler law firm for assistance on the fiduciary duty issue. The law firm asserts that it acquiesced to this request out of a desire to protect its $2.9 million charging lien, realizing that it could only recover upon it if GBJ succeeded in the underlying litigation. Thus, it provided assistance on the fiduciary duty issue, and on March 26, 1999 attempted to submit an amicus curiae brief separate from the one submitted on GBJ's behalf. When the district court rejected the amicus brief in August 1999, a single memorandum, apparently a collaboration between attorney Jones and the Butler law firm, was offered in support of GBJ's position and filed in mid-September.
 
 
 13
 As litigation of the fiduciary duty issue proceeded, Butler alleges that GBJ's new counsel solicited the firm's aid in litigating the remaining dispute, the apparently more complex tax recapture issue. In a March 31, 1999 order the district court had referred the tax recapture issue to a Special Master, and Butler claims that its subsequent assistance to GBJ on this issue was exhaustive, including: prepping GBJ's counsel on discovery methods and trial techniques in advance of a July 1999 hearing before the Special Master; identifying and arranging for a tax expert to refute Sequa's expert report; purchasing two hearing transcripts for GBJ in the course of the sessions before the Special Master; and drafting GBJ's August 14, 1999 post-hearing memorandum, which was submitted to the Special Master. Butler provided this aid purportedly because it had been forced to make a "Hobson's choice": either expend its own time and money to ensure that GBJ would succeed in its claims against Sequa, so that Butler could later recover its charging lien, or do nothing and likely lose the lien.
 
 
 14
 Butler avers that as a result of these repeated requests, it became increasingly concerned regarding the ability of attorneys Manuel and Jones to litigate GBJ's claims successfully against Sequa, an adversary the Butler firm describes as possessing "unlimited financial and personnel resources." While purportedly not questioning the competence of the two solo practitioners, Butler maintains they are not receiving adequate financial support from their client, and are either unable or unwilling to litigate the claims without such support. The law firm further notes that it has expended approximately 600 hours on the dispute subsequent to its discharge. Attorneys Manuel and Jones counter that Butler has exaggerated its role in the litigation, and declare that they, not Butler, have performed the lion's share of the work, toiling for a combined 8,000 hours on the case.
 
 
 15
 Butler declares that two incidents were the proverbial straws that broke the camel's back, and induced it to seek leave of court to cease acting as an outside adviser to GBJ, and instead intervene in the action in its own right. The first incident was a request by GBJ in September 1999 that Butler pay for the Special Master's fee following the hearing on the tax recapture issue. The law firm allegedly balked at this request, viewing it as a further sign of the inability of GBJ to litigate its claims effectively. It cites the second incident as further proof of GBJ's dire financial position, that is, the fact that Sequa, GBJ's adversary, eventually paid the fee. Finally, on September 13, 1999, attorney Manuel and an attorney for Butler had an apparent confrontation when Manuel discovered that Butler was preparing a motion to intervene, after it had previously assured him that it would remain disassociated from the litigation. Four days later, by a letter dated September 17, 1999, Butler sought leave of the district court to move, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, to intervene in the underlying action. Butler's letter also referenced permissive intervention under Rule 24(b), but the gist of the motion was directed to intervention as of right under Rule 24(a).
 
 
 16
 At the November 2, 1999 oral argument before District Judge Deborah A. Batts on the motion to intervene, contrary positions were expressed respecting whether GBJ opposed Butler's motion. Attorney Manuel, as counsel for GBJ, represented that GBJ's principal, Jeffrey Gelmin, had "said in no uncertain terms... that he had no intention of seeing Butler, Fitzgerald & Potter intervene in this case." Timothy Butler, who claimed to represent Gelmin on other matters -- and who, although not a member of the Butler law firm, served as an intermediary with that firm -- stated that Gelmin had informed him that he took no position on the motion to intervene. According to Timothy Butler, Gelmin had also said that he did not feel that GBJ was "capable of seeing this through to the end, that we do not have the resources or the ability to see it through." Predictably, Sequa opposed the motion to intervene.
 
 
 17
 In a December 22, 1999 order Judge Batts denied Butler's motion to intervene under Rule 24. She ruled that Butler did not meet three of the four requirements for Rule 24(a) intervention. From the denial of its motion, Butler appeals. We affirm.
 
 DISCUSSION
 
 18
 We review the denial of a motion to intervene for abuse of discretion. United States v. City of New York, 198 F.3d 360, 364 (2d Cir. 1999). This standard reflects the view that district courts, due to their proximity to the dispute, usually have a better sense of the case's factual nuances upon which a motion to intervene often turns. United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994).
 
 
 19
 Rule 24(a) of the Federal Rules of Civil Procedure governs intervention as a matter of right by a non-party into an ongoing litigation. It provides that
 
 
 20
 [u]pon timely application anyone shall be permitted to intervene in an action...
 
 
 21
 (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 22
 Fed. R. Civ. P. 24(a).
 
 
 23
 As the language of the rule suggests, a putative intervenor as of right must meet four criteria: the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties. Pitney Bowes, 25 F.3d at 70. A would-be intervenor's failure to meet all of these requirements justifies the denial of its motion. Id.
 
 
 24
 Butler was found deficient in three of the requirements: specifically, the district court held its motion was untimely, the law firm had not established it possessed an interest in the action justifying intervention, and even if it had such an interest, that interest was already adequately protected by counsel for GBJ. Because we think the trial court's ruling finds support under two of its three rationales, we need not rule on the third one.
 
 I. The Interest Requirement
 
 25
 The trial court sustained its denial of Butler's motion by holding first that "movants have not demonstrated that they have an 'interest' of the sort contemplated by Rule 24." We have not had occasion to address whether a discharged attorney's charging lien is a sufficient interest to support intervention as of right into a client's underlying action. We recognize that there are arguments both for and against allowing discharged attorneys to intervene to protect their legal fees, and those arguments merit comment. But, because we conclude the order appealed from finds sufficient support on other grounds, we need not resolve that close question in this case.
 
 A. New York Charging Liens
 
 26
 New York's statutory charging lien, see N.Y. Judiciary Law § 475 (McKinney 1983), is a device to protect counsel against "the knavery of his client," whereby through his effort, the attorney acquires an interest in the client's cause of action. In re City of New York, 5 N.Y.2d 300, 307 (1959). The lien is predicated on the idea that the attorney has by his skill and effort obtained the judgment, and hence "should have a lien thereon for his compensation, in analogy to the lien which a mechanic has upon any article which he manufactures." Williams v. Ingersoll, 89 N.Y. 508, 517 (1882).
 
 
 27
 Butler's charging lien, fixed by the magistrate at $2.9 million, is of obvious value to the law firm. Further, the lien is clearly put at some risk by the proceedings below, for under § 475 of the New York Judiciary Law, the law firm may only collect on the lien in the event of a verdict in GBJ's favor. If GBJ's claims against Sequa do not result in a substantial judgment for GBJ, Butler's charging lien will be extinguished. See N.Y. Judiciary Law § 475 ("From the commencement of an action... the attorney who appears for a party has a lien upon his client's cause of action... which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor."); see also Gordon v. Shirley Duke Assocs. (In re Shirley Duke Assocs.), 611 F.2d 15, 18 (2d Cir. 1979) ("The rationale of section 475 is that an attorney should have a lien for his litigation efforts that bring a fund into existence; it is upon the fund thus created, either by judgment or settlement, that the lien is imposed.").
 
 B. Rule 24(a)
 
 28
 Despite the substantial value of the charging lien, and its potential impairment by an adverse judgment, it is not certain whether this lien qualifies as an interest sufficient to justify Butler's intervention as of right into the dispute between GBJ and Sequa. To begin with, it is questionable whether a discharged attorney's intervention into a former client's action fits within the language of the Federal Rules. Rule 24(a) provides in pertinent part that the putative intervenor must "claim[] an interest relating to the property or transaction which is the subject of the action." Fed. R. Civ. P. 24(a) (emphasis added). The interest of discharged counsel seemingly is not in the subject of the underlying action, i.e., the contract dispute that precipitated the litigation, but is rather an interest in recovering delinquent attorney's fees following an award in favor of its former client. An analogous case is Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 876 (2d Cir. 1984), in which we affirmed the denial of a general liability insurer's petition to intervene as of right in a breach of contract action brought against one of its insureds. In holding that the insurer did not have an interest justifying intervention, we relied in part upon the reasoning that the insurer's interest was only in its potential liability following an adverse judgment against its insured, and not in the underlying breach of contract action. See id. at 875.
 
 
 29
 Similarly, the interest of discharged counsel in their attorney's fees is unrelated to the underlying cause of action. Hence, that interest does not present a particularly persuasive argument for intervention. Cf. Crown Fin. Corp. v. Winthrop Lawrence Corp., 531 F.2d 76, 77 (2d Cir. 1976) (per curiam) (affirming district court's denial of petition to intervene by purchaser of land with lien upon it because purchaser did not have an interest in original action in which creditor gained the security interest in the land). But see United States v. Eilberg, 89 F.R.D. 473, 474 (E.D. Pa. 1980) (holding that law firm may intervene in suit against former partner based upon contention that they were entitled to disputed distributive fee, and rejecting argument that firm only had an interest in the contractual arrangement amongst firm partners and not the subject of the underlying action).
 
 
 30
 Under state law, however, Butler's charging lien may indeed constitute an interest in the underlying action itself. New York precedent, which governs attorney's charging liens issued by federal courts in New York, see Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448-49 (2d Cir. 1998), defines a charging lien as giving an "equitable ownership interest in the client's cause of action," rather than providing for a mere "priority of payment" in favor of the attorney, LMWT Realty Corp. v. Davis Agency Inc., 85 N.Y.2d 462, 467-68 (1995). Under this reasoning a client who enlists the services of counsel on a standard one-third contingency fee arrangement equitably assigns a proportionate share of the cause of action to counsel. The client is left with only the remaining balance of any eventual judgment after the attorney receives his agreed upon share. In re City of New York, 5 N.Y.2d at 307-08. Butler's charging lien therefore represents at least arguably an equitable interest in the underlying cause of action.
 
 C. Client's Control of Litigation
 
 31
 Distinct from the question of whether a charging lien falls within the language of Rule 24 are the public policy repercussions that arise when discharged counsel is permitted to intervene as of right in his former client's action to protect an interest in legal fees. The Fifth Circuit appears to be the only federal appellate court to have grappled expressly with the problem of terminated attorneys as putative intervenors. Gilbert v. Johnson, 601 F.2d 761, 767 (5th Cir. 1979) (discharged attorney may intervene as of right when he has a lien upon his former client's cause of action); Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir. 1970) (per curiam) (intervention as of right by former counsel based upon contingent fee contract). The Ninth Circuit has avoided the issue on two occasions. Venegas v. Skaggs, 867 F.2d 527, 531 (9th Cir. 1989), aff'd sub nom. Venegas v. Mitchell, 495 U.S. 82 (1990); Stockton v. United States, 493 F.2d 1021, 1024 (9th Cir. 1974). But while the Fifth Circuit has adhered to its holdings in Gaines and Gilbert allowing intervention, that Circuit has more recently questioned whether a discharged attorney's intervention into a former client's action contravenes prudent public policy. See Keith v. St. George Packing Co., 806 F.2d 525, 526 (5th Cir. 1986) ("Although Gaines may not represent the most persuasive use of Fed. R. Civ. P. 24, it binds us as the law of this Circuit until modified en banc.").
 
 
 32
 We agree that substantial policy interests are implicated by allowing a discharged attorney to intervene in a former client's action as a matter of right. In the case of a charging lien, an attorney's interest is aligned with that of his former client, and presumably the attorney's self-interest would dictate it not deliberately impair the litigant's chance of recovery. Yet, an intervenor-counsel might advance arguments either not raised, or even in conflict with those already made, unintentionally undermining the current trial strategy of his former client. Cf. Gilbert, 601 F.2d at 768 (Rubin, J., specially concurring) ("If there is an absolute right to intervene, the former lawyer may attempt to assert new issues or indeed to interfere with the management of the lawsuit by his successor as if he were a co-owner of the claim.").
 
 
 33
 Further, although the intervenor counsel and the client might both desire the client's ultimate success, their cost-benefit calculuses may well diverge. While the law firm's sole interest is generally in a financial recovery upon the charging lien, the decision-making of the former client may incorporate other factors. The client might, for example, elect to forego pecuniary remuneration for equitable relief or other non-monetary compensation, or might simply wish to discontinue litigation in light of ever-mounting inconvenience and expense. Such considerations would be of little relevance to the former counsel, who would wish to press the case to a final judgment of either financial reward or ultimate defeat. These competing concerns might lead to a litigation impasse or to the subjugation of the client's interests to that of its former counsel. Cf. Pinto v. Allstate Ins. Co., 221 F.3d 394, 398-99 (2d Cir. 2000) (discussing conflicting settlement interests of an insured and the insurer who has assumed control over a claim's defense).
 
 
 34
 GBJ has already discharged Butler as counsel. To allow Butler to reappear and again argue GBJ's case, this time nominally in support of Butler's own interests, impugns the historical privilege of clients to decide who will represent them, and when that representation shall cease. See, e.g., Demov, Morris, Levine & Shein v. Glantz, 53 N.Y.2d 553, 557 (1981) ("When an attorney-client relationship deteriorates to the point where the client loses faith in the attorney, the client should have the unbridled prerogative of termination. Any result which inhibits the exercise of this essential right is patently unsupportable.").
 
 
 35
 Since we are not presently persuaded by the reasoning of those handful of courts that have dealt with this issue, and the district court's decision is fully justified on other grounds, we decline today to decide whether the financial stake of discharged counsel in its former client's action is the type of interest contemplated by Rule 24(a). We note parenthetically, however, that an attorney's charging lien is not the only potential source of remuneration for terminated counsel. Under New York law, the attorney still has an avenue to recover legal fees owed via a plenary action in quantum meruit for the reasonable value of services rendered. This remedy, pursued by Butler in state court, is distinct from the charging lien remedy and the law firm's suit to fix the charging lien does not preclude a suit in quantum meruit. Butler, Fitzgerald & Potter v. Gelmin, 235 A.D.2d 218, 219 (1st Dep't 1997).
 
 II. Adequacy of Representation
 
 36
 It was not an abuse of discretion for the trial court to hold that Butler's interests were already adequately protected by GBJ, an existing party to the dispute, and to deny the motion to intervene on that basis. While the burden to demonstrate inadequacy of representation is generally speaking "minimal," Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972), we have demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective, Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990); U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action. See Brennan, 579 F.2d at 191.
 
 
 37
 Butler concedes, as it must, that its interests are aligned with those of GBJ, for its recovery upon the charging lien is predicated upon a favorable result for GBJ on the claims against Sequa. Cf. Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186, 191 (2d Cir. 1970) (denying intervention as of right to assignee of mortgagee in action by mortgagor against its insurer, because assignee and mortgagor had identical interests in that the former could only recover if the latter's suit was successful). The law firm insists it rebutted this presumption of adequacy by demonstrating that GBJ no longer has the resources to pursue this protracted litigation. In support of this proposition, appellant avers that its attorneys have logged over 600 hours working on this case subsequent to the firm's termination, and that it has made financial outlays to GBJ on multiple occasions in furtherance of its former client's cause.
 
 
 38
 We have not had occasion to lay down a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action. Although perhaps not an exhaustive list, we generally agree with the holdings of other courts that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy. See United States v. Int'l Bus. Machs. Corp., 62 F.R.D. 530, 538 (S.D.N.Y. 1974) (denying motion by law firm to intervene in client's action for purposes of asserting work product privilege); see also Daggett v. Comm'n on Govtl. Ethics & Election Practices, 172 F.3d 104, 111 (1st Cir. 1999) (rejecting argument that there is an exclusive list of circumstances that rebut a presumption of adequacy). Regardless of what constitutes the necessary showing, we are confident that this record does not support Butler's allegations of inadequacy.
 
 
 39
 Attorneys Manuel and Jones have represented GBJ's interests since Butler's discharge in April of 1995. Their legal efforts have spanned the majority of an 80-day trial, the subsequent appeal of the judgment resulting from that trial, and all the proceedings following our 1998 remand. We agree with the district court's observation that it found nothing in the record to suggest that defendants' counsel has been or will be less than diligent in litigating this case.
 
 
 40
 Appellant and GBJ's counsel paint contrasting pictures of their respective roles. Appellant asserts it has taken the lead in advancing GBJ's claims, dictating the day-to-day litigation strategy and writing the briefs on the remanded issues. The solo practitioners, appellant contends, now serve primarily an editorial function, simply editing drafts of the briefs before their final submission to the district court. Attorneys Jones and Manuel admit that Butler assisted during the brief drafting process, but insist that the weight of the work, and the final say in strategy, ultimately has been theirs. Further, Manuel claims that the apparently elusive Gelmin, CEO of GBJ, has unequivocally expressed his opposition to the Butler firm's intervention. Timothy Butler, the "conduit" between Butler and GBJ, to the contrary warrants that Gelmin stated he does not have the financial resources to continue and took no position on the motion to intervene.
 
 
 41
 We are unwilling to wade through this sort of Tweedledee and Tweedledum cross-purposes argument to unravel who did what work and who said what to whom. Nor do we see a rational method to ascertain whether the assistance provided by Butler, whatever that may have been, was indeed furnished on account of GBJ's financial necessity. It may be just as likely that Butler worked cooperatively with counsel for GBJ out of a desire to exert control over litigation strategy. GBJ's present counsel, disputing the necessity of Butler's aid, attest that they have represented their client both vigorously and capably to date, and will continue to do so in the future. The true purpose of the present motion, they assert, is a desire on the part of Butler to have unfettered discretion in deciding litigation tactics. If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning. United States v. Yonkers Bd. of Educ., 902 F.2d 213, 218 (2d Cir. 1990).
 
 
 42
 Further, while we agree in principle that an existing party's proven lack of financial resources to continue litigation may signify inadequate representation, see, e.g., Teague v. Bakker, 931 F.2d 259, 262 (4th Cir. 1991), we do not believe the limited financial outlays provided here by Butler necessarily prove GBJ's inability to litigate this case effectively in the future. Attorney Manuel cryptically indicated in the proceedings below that the attorney/client privilege prohibited him from divulging why his client did not provide funds for copies of the transcript before the Special Master or for the Special Master's fee. He did state that Butler's portrayal of the financial dealings between GBJ and counsel was inaccurate. Hence, we conclude that appellant's limited financial advances, absent further evidence of the alleged precarious economic position of GBJ, are insufficient to rebut the presumption of adequate representation.
 
 
 43
 In its appellate brief, Butler charges that it should not be penalized for having assisted GBJ, because absent this assistance GBJ's case would have been in complete disarray by this time. We do not view a holding denying intervention as penalizing Butler for the aid it has provided. Rather, such a holding would simply indicate that by providing such assistance, Butler has made it impossible for this Court to perceive GBJ's alleged deficiency, in light of the fact that its position has been effectively litigated to date.
 
 
 44
 Moreover, the district court resolved these competing claims in favor of GBJ, and by finding that GBJ's attorneys would continue to litigate this case diligently, it implicitly further found that counsel has both the requisite resources and ability to do so. The district court exercised its discretion by holding that Butler failed to rebut the presumption of adequate representation. Cf. Brennan, 579 F.2d at 191 ("Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court."). We cannot say that such exercise was an abuse of discretion.[1]
 
 III. Timeliness
 
 45
 The district court also did not abuse its discretion in holding that, even had the other three requirements of Rule 24(a) been met, Butler's motion should be denied as untimely. A trial court's broad discretion in assessing the timeliness of a motion to intervene is not a subject that easily lends itself to a precise definition. Weisshaus v. Swiss Bankers Ass'n (In re Holocaust Victim Assets Litig.), 225 F.3d 191, 198 (2d Cir. 2000); accord D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001). Factors that inform the timeliness determination include: how long the motion to intervene was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of timeliness. Pitney Bowes, 25 F.3d at 70.
 
 
 46
 Butler's delay was unreasonable, the trial court believed, because it knew of its interest in the ongoing action when the charging lien was imposed in 1995, and it should have known no later than late 1998 that its interests might not be adequately represented. See Sequa Corp. v. Gelmin, No. 91 Civ. 8675, slip op. at 4 (S.D.N.Y. Dec. 22, 1999). Contending this finding was error, Butler maintains that it did not realize the threat to its interests until the summer of 1999, when GBJ first solicited financial support from it. When appellant may actually have realized the threat to its lien, however, does not necessarily control the length of delay finding. Delay is not measured solely subjectively because, if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion. Cf. Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) ("Among the most important factors in a timeliness decision is 'the length of time the applicant knew or should have known of his interest before making the motion.'") (quoting Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts., 847 F.2d 1038, 1044 (2d Cir. 1988)) (emphasis added).
 
 
 47
 We agree with the district court that Butler realized or should have realized the threat to its charging lien, based on GBJ's alleged inadequate representation, sometime shortly after our August 20, 1998 remand. As Butler acknowledges, it began assisting counsel for GBJ in late 1998, and attempted to submit an amicus brief to the district court the following March. We believe that GBJ's purported solicitation of help from a law firm that it had previously discharged should have alerted Butler to any possible danger that its charging lien might not be adequately represented. Appellant's subsequent attempt at filing an amicus brief reveals it did in fact believe that GBJ's representation of Butler's interests was inadequate. But the request to intervene was made in September 1999, more than a year after Butler should have realized the threat, if any, to its charging lien.
 
 
 48
 Concededly the length of an intervenor's delay is only one of the factors controlling timeliness. United States v. New York, 820 F.2d 554, 557 (2d Cir. 1987). Nevertheless, the length of delay is an important factor for timeliness and Butler's failure to act promptly weighs against it in the timeliness calculus. See Catanzano, 103 F.3d at 232-33 (denying intervention after motion was filed 18 months after applicant knew of interest in litigation); see also In re Holocaust Litig., 225 F.3d at 199 (eight month delay before motion to intervene); Pitney Bowes, 25 F.3d at 71 (constructive knowledge of interest 15 months prior to motion to intervene and actual knowledge for eight months); New York, 820 F.2d at 557 (15 month delay after applicant knew or should have known of interest).
 
 
 49
 The second timeliness factor, the prejudice to existing parties resulting from the movant's delay, is only minimally implicated by the instant motion, as the law firm told the trial court it did not wish by its motion to undo any prior matters already resolved in the case. In this nearly nine-year-old litigation, however, allowing Butler to intervene, at what the district court called the "eleventh hour," would cause more delay, see Sequa Corp., No. 91 Civ. 8675, slip op. at 4, and provide only the limited benefit of allowing a second party to argue the merits of GBJ's case.
 
 
 50
 The third factor gives us some pause, because assuming Butler's interest is not otherwise adequately represented, the prejudice to the Butler law firm of not allowing it to intervene is appreciable. Such prejudice is mitigated by the fourth factor, the unique circumstances present that justified the district court's ultimate denial of the motion. For over a year, Butler and GBJ had cooperatively litigated this case, until an apparent disagreement over strategy precipitated Butler's motion to intervene. Despite this falling-out, counsel for GBJ have indicated that they would not object to working in concert with appellant once again. Although we affirm the district court's denial of Butler's motion to intervene in its own right, the law firm may still promote GBJ's interests by again working alongside its former client's new counsel.
 
 
 51
 Consequently, considering the nearly one year delay before making its motion, the late stage of litigation, and the unusual circumstance of the heretofore cooperative relationship between Butler and GBJ, it was not an abuse of the district court's discretion to rule that appellant's motion to intervene was untimely.
 
 CONCLUSION
 
 52
 Accordingly, for the reasons stated, the order appealed from is affirmed.
 
 
 
 NOTE:
 
 
 [1]
 Judge Jacobs would decide this case on the ground stated in this Point II: that Butler failed to show an abuse of discretion in the district court's finding that the presumption of adequate representation was unrebutted. Since Butler's intervention depends on establishing all four requisites of Rule 24(a), see supra at -- - ---, Butler's failure to establish inadequate representation defeats the motion. Accordingly, Judge Jacobs: would not discuss the sufficiency of the interest, which is dicta (Point I); concurs that the panel need not reach the vulnerability of Butler's putative interest; and would not reach timeliness (Point III) because the adequacy of representation throughout means that any motion to intervene would have been premature rather than late.