**UNITED PARCEL SERVICE OF AMERICA, INC., Plaintiff,**

v.

**The NET, INC. and John Does 1–10, Defendants.**

CV 99–7059(ADS)(ARL).

United States District Court, E.D. New York.

Jan. 15, 2005.

King & Spalding, by David M. Viscomi, Thomas H. Curtin, of Counsel, New York City, for Plaintiff.

Keith Maydak, N. Versailles, PA, Pro Se Intervening–Defendant.

No Appearance: The Net, Inc.

## MEMORANDUM OF DECISION
## AND ORDER

SPATT, District Judge.

United Parcel Service of American, Inc. ("UPS" or the "plaintiff") commenced this action alleging that The Net, Inc. ("The Net") and John Does 1 through 10 (collectively, the "defendants") engaged in trademark dilution and infringement, unfair competition, deceptive business practices, cyberpiracy, and misappropriation of the plaintiff's goodwill, reputation, and business property. Presently before the Court are renewed motions by intervening-defendant Keith Maydak, appearing *pro se*, for leave to intervene in this action and to dismiss the complaint for lack of a "justifiable" controversy, as moot, and for failure to name the real party in interest. Maydak previously moved this Court to intervene and dismiss on May 18, 2001, but the Court declined to decide Maydak's motions because there were numerous disputes of fact that required further discovery between the parties. The background of this case is incorporated in this Court's two previous orders dated February 15, 2002 ("2002 Order") and March 8, 2003 ("2003

Order"), familiarity with which is presumed. The relevant history and facts are repeated for the purpose of addressing the instant motions.

## I. BACKGROUND

### A. Procedural History

On or about June 9, 1997, the defendants registered the domain name "ups.net" with InterNIC through Network Solutions, Inc. ("NSI"), which handles domain name registration services for InterNIC. The plaintiff did not license or authorize the defendants to use the mark UPS and did not authorize the defendants to register the name "ups.net."

UPS filed an amended complaint on January 26, 2000. In an order dated May 18, 2000, the Court granted a motion by UPS to deposit the original NSI Registrar Certificate, which registered the domain name "ups.net", into the Registry of the Court. The Court's order provided, among other things, that this deposit has the effect of tendering to the Court complete control and authority over the registration of the "ups.net" domain name registration record. The order further directed NSI to maintain the *status quo* with respect to the domain name, which is currently on "hold", until temporary or final order of this Court.

On June 22, 2000, the Court received an affidavit of service stating that on May 31, 2000, Gianfranco Mitrione served copies of, among other things, the amended summons and complaint on: (1) The Net, Inc., at 1344 Broadway, Suite 211, Hewlett, New York, 11557; and (2) The Net, Inc., c/o Randy Epstein, 7333 Ashley Shores Circle, Lake Worth, Florida, 33467. In a motion dated March 5, 2001, UPS requested that the Court enter a default judgment against the defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure.

In a letter dated March 13, 2001, Keith Maydak ("Maydak") informed the Court that, (1) he is the proprietor of The Net; (2) he was willing to accept service on behalf of The Net; (3) he wished to appear on behalf of The Net; (4) he had learned of the lawsuit from a third party; (5) he had not received any of the papers that had been filed in the case; and (6) he wanted to file a motion to dismiss the complaint on the ground that the

plaintiff failed to properly serve copies of the summons and complaint. On March 26, 2001, the Court received a "Notice of Appearance for The Net, Inc., and John Doe 1." The notice states, "Defendant The Net, Inc., by and through it sole proprietor, Keith Maydak, sued as John Doe I, *pro se*, notifies the Court that the parties that they appear specially in this action as defendants to challenge sufficiency of service and personal jurisdiction." The notice also sets forth the defendants' address as 500 Lincoln Highway, N. Versailles, PA 15137. In addition to the Notice of Appearance, the Court received a motion from Maydak to strike the default that had been entered against The Net.

In the 2002 Order, the Court granted Maydak's motion to vacate the default judgment because it found that, (1) The Net's default was not willful; (2) setting aside the default would not prejudice UPS; and (3) The Net had a meritorious defense. In the 2003 Order this Court declined to decide Maydak's motion to intervene and dismiss because there were numerous disputes of material fact and contradictions between the two parties. This Court directed the parties to proceed with discovery to determine Maydak's involvement with ups.net.

On June 14, 2004 Maydak filed the instant renewed motion to intervene and dismiss, stating the following reasons: (1) the plaintiff continues to allege that Maydak does not own The Net; (2) no motion to join Michael Sussman and Randy Epstein has been lodged; and (3) the plaintiff has not amended the complaint to name any other party or clarify the identities of the John Doe defendants. Maydak also requested that "[i]f this Court finds that The Net does not constitute a proprietorship of Maydak, he should be granted intervenor status to defend his rights in this case."

In response, the plaintiff objects to the motion of Maydak to intervene, contending that Maydak has not produced a shred of credible evidence that supports his claim that he has an interest in either the named defendant, The Net, or the underlying property, the ups.net domain name. In addition, the plaintiff submits numerous exhibits support-

ing its contention that Maydak has no connection to The Net.

### B. Factual Background

According to the plaintiff, discovery has revealed the following concerning the domain name ups.net. In 1997, Randy Epstein, using his email address, repstein@host.net, emailed a registration request for the domain name ups.net to hostmaster@internic.net. The address provided on the registration was identical to the address of a mail box Epstein rented at 1344 Broadway, Hewlett, New York. In addition, an invoice for ups.net dated May 10, 1999 lists SUCK, another internet entity owned and controlled by Randy Epstein as the billing contact with the same Hewlett, New York address.

In addition, UPS contends that the content that appeared on ups.net was identical to the content posted on another website, NASA.COM, which Epstein registered and owned. In support of its position, the plaintiff submits an exhibit which contains a photocopy of the content posted on ups.net. A second exhibit contains an article posted on www.wired.com/news/politics that describes the content of the NASA.COM web site. The article describes that NASA.COM had "a photo of Mike Tyson nuzzling Evander Holyfield and the caption 'Hey Mikey! Eat First, THEN fight!'" After comparing both exhibits, the Court finds that the contents appearing on both web sites are identical.

The plaintiff also submits that the advertising banner at the top of the ups.net web site serves as a link to a pornographic web site located at the domain NAKED-EYES.COM. The plaintiff contends that a search on the WHOIS database shows that Epstein was designated as the technical contact owner of NAKEDEYES.COM. In addition, the plaintiff claims that the ups.net web pages contained a hypertext link to the HOST.NET web site, which contains a byline apparently owned and operated by The Net. HOST.NET featured several links on the page, one of which was a link to "The Friends of Keith Maydak." Furthermore, a copy of a WHOIS report for NASA.COM identifies the web site as utilizing the same address and phone number as The NET, Inc. used for ups.net.

During discovery the plaintiff has also revealed a lawsuit initiated by Maydak in the Court of Common Pleas of Westmoreland County, Pennsylvania, *Keith Maydak v. The Net, Inc.*, No. 6316 of 1999. In the complaint in that case, Maydak asks the court to declare the rights of the parties regarding the use of certain internet domain names, including ups.net. Maydak states that The Net's sole proprietor is Michael Sussman ("Sussman") and that through an agreement certain domain names were assigned to Maydak.

On the other hand, Maydak contends that in 1995 he asked Sussman, his alleged agent, to register several domain names, including ups.net, with the use of Sussman's credit card. Maydak asserts that he intended to use the ups.net domain name to sell "uninterruptible power supplies." However, his incarceration in prison prevented him from obtaining access to the internet and from creating content on the internet domain. Maydak also alleges that The Net does not exist: it has conducted no business; it is merely a name that he registers internet domains under; and that it is his alter-ego. Maydak states that he is presently being held at the North Fraser Pretrial Center in Port Coquitlam, British Columbia, Canada, pursuant to a diplomatic note submitted to Canada by the United States requesting extradition for supervised release violations.

In fact, Maydak has been incarcerated in numerous prisons during the majority of events that led to this litigation. In June 1994, Maydak was incarcerated in a federal penitentiary for his conviction in a federal court on counts of mail fraud, wire fraud, access device fraud and money laundering. The parties do not dispute that at all relevant times during this domain name dispute, Maydak was in prison and had no access to a computer.

Maydak does not offer any additional support with his most recent renewed motion, but relies on his previous submissions. In his previous motion, the only support for his assertions came from a declaration by Epstein in which he states that he has no ownership interest in ups.net or The Net. Epstein denies registering ups.net. Epstein states that while certain hosting services may

have been provided by entities with whom he is affiliated, he was never responsible for the content of ups.net. Epstein claims that Maydak maintained sole responsibility and control for the web site. In addition, Maydak submitted two declarations describing how he is the owner of ups.net. In the first declaration, Maydak asserts that in 1997, he registered the ups.net domain name by directing his agent, Sussman, to register the domain name with the use of Sussman's credit card. Maydak admits that he was incarcerated at this time, but claims that he reserved the domain name for future ventures. Maydak maintains that the web site was registered to The Net and that he is the sole proprietor. In his declaration, Maydak contends that Epstein did not register The Net and that Epstein is neither the owner nor an agent of The Net.

Maydak explains that the address listed on the web site registration was due to an error made by his agent Sussman, who did not know which address to use. Maydak claims that on several occasions, he attempted to update the information on his web site. However, he claims that because he had no access to a computer while in prison, he sent his notices by mail to NSI but that NSI never responded to his requests.

In addition, Maydak claims that he was unaware that UPS commenced this action until Epstein notified him that papers were taped to his door at Epstein's Florida address. Maydak states that he was also unaware that his web site had expired and that funds were due. As a result, Maydak claims that the registration ultimately expired and went back into the public domain. Maydak states that he did not transfer the web site to any third party. Furthermore, Maydak claims that one Greg Ricks registered the site when it became available to the public and that he was unaware that Ricks registered the web site until this suit was commenced. Maydak claims no one named in this suit maintains control over the web site.

## II. *DISCUSSION*

 The Court is mindful that the intervenor-defendant is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,*

449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). District courts should "read the pleadings of a pro se ... liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law...." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (internal quotations and citation omitted). Hence, the rules of civil procedure regarding intervention are equally applicable to *pro se* plaintiffs. *See, e.g., Palmer v. Readers' Digest Ass'n, Inc.,* 1989 WL 107618, *1 (S.D.N.Y.1989) (giving the pro se motion to intervene a "charitable reading").

Intervention is governed by Rule 24 of the Federal Rules of Civil Procedure. Rule 24 allows a party to intervene either as a matter of right or by permission of the court. Intervention as a matter of right is allowed if a statute confers an unconditional right to intervene or if the party seeking intervention has an interest in the lawsuit. Fed.R.Civ.P. 24. The rule states:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Civ.P. 24(a).

Permissive intervention is allowed if a statute confers a conditional right to intervene or if the applicant has a common question of law or fact. *Id.* Here, Maydak does not state whether he is seeking to intervention of right or permissive intervention. Because the thrust of Maydak's argument is that he is the true owner of The Net and ups.net, the

Court will construe his motion as one seeking intervention of right based on his alleged interest in the subject of the action.

■ Under Rule 24(a), a putative intervenor of right must establish four criteria: "the applicant must (1) file a timely motion; (2) claim an interest relating to the property or transaction that is the subject of the action; (3) be so situated that without intervention the disposition of the action may impair that interest; and (4) show that the interest is not already adequately represented by existing parties." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir.2001). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Security Pacific Mortg. and Real Estate Services, Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir.1992) (quoting *Farmland Dairies v. Comm'r of N.Y. Dep't of Agriculture*, 847 F.2d 1038, 1043 (2d Cir.1988)).

■ In considering a motion to intervene, the court must accept as true nonconclusory allegations of the motion. *Oneida Indian Nation of Wisc. v. New York*, 732 F.2d 261, 265 (2d Cir.1984); *Sackman v. Liggett Group, Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y.1996). Allegations that are frivolous on their face need not be considered by the court. *Bay Casino, LLC v. M/V Royal Empress*, 199 F.R.D. 464, 466 (E.D.N.Y. 1999). In addition, "an application to intervene cannot be resolved by reference to the ultimate merits of the claims which the intervenor wishes to assert following intervention...." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123 (2d Cir.2001). In addition, the putative intervenor has the burden of showing a right to intervene. *In re NASDAQ Market–Makers Antitrust Litigation*, 187 F.R.D. 465, 490 (S.D.N.Y.1998); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55, 58 (S.D.N.Y.1993).

■ In this case, Maydak alleges that he has an interest in The Net. Specifically, he claims that he is the sole proprietor and that The Net is his alter ego. In order for an interest to be sufficient to permit intervention, it must be "direct, substantial, and legally protectable." *Brennan*, 260 F.3d at 129 (quoting *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*,

922 F.2d 92, 97 (2d Cir.1990)). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec.*, 922 F.2d at 97.

■ A sole proprietorship is "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity." Black's Law Dictionary (8th ed.2004). In contrast to a corporation, a sole proprietorship has no separate existence, but rather exists as the so-called "alter ego" of the owner. *See Vallejo v. Webb*, 1985 WL 234, 1985 U.S. Dist. LEXIS 23204 (S.D.N.Y.1985) (describing the alter ego nature of a sole proprietorship). Although a sole proprietorship has no separate existence, an owner could establish that it has operated an entity as a going business concern by showing, among other things: (1) that it is doing business under a certain name; (2) the use of a checking account for the payment of business expenses; (3) the maintenance of an office; (4) the funding of and borrowing from an account; or (5) bank transactions that would support a business. *See e.g., LiButti v. U.S.*, 107 F.3d 110, 120 (2d Cir.1997).

■ Here, Maydak has offered not one shred of credible evidence. Maydak's own conclusory allegation that he has operated The Net—a business dealing exclusively with the internet—from prisons that do not have internet access is absurd. Indeed, the evidence reveals that in 1999 Maydak initiated a lawsuit against an entity named The Net, Inc. In that lawsuit he alleged that Michael Sussman operated The Net. In the instant action, Maydak's allegations contradicts those allegations. Here, Maydak claims that he directed Michael Sussman to register the ups.net domain name with the use of Sussman's own credit card. In addition, throughout the duration of this protracted litigation, Maydak has not responded to one request for production of documents. Based upon these contradictions and factors, it appears that Maydak cannot offer any tangible proof to support his allegation that he operates The Net as a going business concern.

The only other support that Maydak offers is the declaration of the alleged owner of The

Net, Randy Epstein. The declaration is both self serving and patently false. In the declaration Epstein claims that he did not register ups.net. This statement is contradicted by numerous pieces of documentary evidence that show, among other things, that Epstein emailed a request to register ups.net through his email, repstein@host.net. The address provided on this registration was identical to the address of a mail box Epstein rented at 1344 Broadway, Hewlett, New York. In addition, Epstein received invoices for the use of several other websites, which had content posted that was identical to ups.net, at this same address. The Court finds that Epstein's declaration may have been made in an effort to pass liability to a judgment-proof party, namely, Maydak.

Without any credible proof, Maydak is unable to meet his burden of showing that he has a direct and substantial interest in the subject matter of this suit. Accordingly, the Court denies his request to intervene in this action.

As to Maydak's motion to dismiss, because Maydak is not a party to this action he does not have standing to make such a motion, and thus the motion is denied.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Maydak's motion to intervene is DENIED.

**ORDERED,** that Maydak's motion to dismiss the complaint is DENIED; and it is further

**ORDERED,** that the Court's Order dated February 15, 2002 vacating the default judgment is deemed VACATED and the Clerk of the Court is directed to reenter a default judgment against The Net, Inc.; and it is further

**ORDERED,** that the matter is hereby referred to United States Magistrate Judge Arlene R. Lindsay to conduct an inquest as to damages.

**SO ORDERED.**