The UNITED STATES of
America, Plaintiff,

v.

Anthony J. PALERMINO,
et al., Defendants.

No. 3:06cv1405.

United States District Court,
D. Connecticut.

Nov. 8, 2006.

*Service* (Docket # 35).  The Court dismisses this    motion as moot.

Alexander K. Haas, U.S. Department of Justice, Civil Division, Washington, DC, Victoria S. Shin, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

Tatiana D. Eirmann, John G. Haines, Attorney General's Office, New Britain, CT, Bradford Berenson, David Lawson, Edward McNicholas, Eric Shumsky, Sidley Austin LLP, Washington, DC, David Carpenter, Sidley Austin LLP, Chicago, IL, Robert B. Flynn, Robert J. Metzler, II, Tyler Cooper & Alcorn, Hartford, CT, Richard C. Fipphen, Verizon Communications, Inc., New York,

NY, Stanley A. Twardy, Jr., Terence J. Gallagher, III, Day, Berry & Howard, Stamford, CT, for Defendants.

## RULING ON MOTIONS TO INTERVENE [DOCS. ## 12, 18]

ARTERTON, District Judge.

Plaintiff the United States of America ("USA") brought this action against defendant officials of the Connecticut Department of Public Utility Control ("DPUC") and various telecommunication carriers (collectively, "carriers"), seeking to enjoin the production by the carriers to the DPUC of information (if any) disclosed by the carriers to the USA. *See* Compl. [Doc. # 1].

This case arises, *inter alia,* as a result of an application filed by the American Civil Liberties Union of Connecticut ("ACLU–CT") in May 2006 against certain telecommunications carriers before the DPUC seeking an investigation of allegations of DPC rule and regulation violations and/or violations of state and/or federal laws/regulations committed by such carriers through disclosure to the federal government of the Customer Propriety Network Information of all of their customers, including called and calling numbers and the time and date of calls ("DPUC Action"). *See id.* ¶ 34. In August 2006, the ACLU–CT served interrogatories on the carriers involved in the DPUC Action seeking information about their privacy policies, disclosures to third parties since 2001, and information about specific disclosures in response to government requests. *Id.* ¶ 35; First Set of Interrog. [Doc. # 1, Ex. C]. Subsequently, the DPUC issued an order requiring the carrier defendants in that proceeding to respond to the ACLU–CT's interrogatories, denying those defendants' motions to strike the interrogatories. Compl. ¶ 36.

The USA now "seeks to prevent the disclosure of highly confidential and sensitive government information that the defendant officers of the [DPUC] have sought to obtain, and required the production of, from telecommunications carriers without proper authorization from the United States," on the basis that "[c]ompliance with the order, issued by those officers, compelling responses to interrogatories would first place the carriers in a position of having to confirm or deny the existence of information that cannot be confirmed or denied without causing exceptionally grave harm to national security. And if particular carriers are indeed supplying foreign intelligence information to the Federal Government, compliance with the order would require disclosure of the details of that activity." *Id.* ¶ 1.

The USA brought this action against officers of the DPUC and carriers only, and not against ACLU–CT or the Connecticut Office of Consumer Counsel ("OCC"), both of which groups now seek to intervene in this action. *See* ACLU–CT Mot. to Intervene [Doc. # 12]; OCC Mot. to Intervene [Doc. # 18]. The USA opposes these motions (and the defendant carriers join the opposition filed by the USA, *see* [Doc. # 23]), arguing that neither the ACLU–CT nor the OCC have a sufficient interest to warrant intervention and neither has rebutted the presumption of adequate representation by the DPUC defendants. *See* Gov't Opp. [Doc. # 24/25]. For the reasons that follow, the motions to intervene will be granted.

## I. STANDARD

Rule 24(a) provides for intervention as of right upon a timely filed motion "(1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R.Civ.P. 24(a). As stated by the Second Circuit, "[t]o intervene as of right, a movant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Brennan v. N.Y. City Bd. of Educ.,* 260 F.3d 123, 128–29 (2d Cir.

2001) (internal quotation omitted). Under the second prong of the test, for "an interest to be cognizable ... it must be direct, substantial, and legally protectable.... An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *United States v. Peoples Benefit Life Ins. Co.,* 271 F.3d 411, 415 (2d Cir.2001) (internal quotations omitted). A party seeking to intervene, however, need not have an independent cause of action to be considered to have an interest within the scope of Rule 24(a). *Forest Conserv. Council v. United States Forest Serv.,* 66 F.3d 1489, 1493 (9th Cir.1995) ("Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established.") (internal quotations omitted). The party must show only an interest within the context of the case and, as required by the third prong of the test, demonstrate that its interest may be impaired by an adverse decision in the case. *See Brennan,* 260 F.3d at 132. Under the fourth prong, representation by an existing party is determined to be adequate only if the party's "interests [are] so similar to those of [the intervenor] that adequacy of representation [is] *assured." Id.* at 133 (emphasis added). Accordingly, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972). However, "[w]hile the burden to demonstrate inadequacy of representation is generally speaking 'minimal,' ... [the Second Circuit] ha[s] demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective. Where there is an identity of interest, ... the movant to intervene must rebut the presumption of adequate representation by the party already in the action."

Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir.2001).

■ "When considering a motion to intervene, the court 'must accept as true the nonconclusory allegations of the motion.'" *Bay Casino, LLC v. M/V Royal Empress,* 199 F.R.D. 464, 466 (E.D.N.Y.1999) (quoting *Reich v. ABC/York–Estes Corp.,* 64 F.3d 316, 321 (7th Cir.1995)). "A motion to intervene as a matter of right, moreover, should not be dismissed unless it appears to a certainty that the intervener is not entitled to relief under any set of facts which could be proved under the complaint. Each intervention case is highly fact specific and tends to resist comparison to prior cases." *Id.* (internal quotations omitted).

## II. DISCUSSION

### A. Timeliness

■ The USA and the defendant carriers do not dispute the timeliness of the motions to intervene, and as they were filed within a month of the commencement of this action and at the time no responsive pleading or motion to dismiss had yet been filed and no other substantive action had been taken, the Court finds this factor satisfied.

### B. Interest in Action

As noted above, in order for an interest for purposes of Rule 24 intervention to be "cognizable," "it must be direct, substantial and legally protectable," rather than "remote [or] contingent on the occurrence of a sequence of events before it becomes colorable," *Peoples Benefit Life Ins. Co.,* 271 F.3d at 415, although the party seeking to intervene need not have an independent cause of action.

■ Notwithstanding the USA's claim that "[t]he dispute in this case as to whether the State Defendants have th[e] authority [to require the carrier defendants to disclose information that the USA has precluded from disclosure] is between—and solely between—the State Defendants and the United States," Gov't Opp. at 4,[1] both the ACLU–CT and

---

1. The Government further states: "the central issue in this case is whether the State [DPUC] Defendants have the authority to require the Car-

rier Defendants to disclose information that the Federal government has precluded from disclosure. Any claimed interest of ACLU–CT's or

the OCC have an interest in the outcome of this action as such outcome will directly impact (either positively or negatively) the DPUC Action and the individuals on whose behalf the ACLU–CT and the OCC are litigating in that proceeding. The outcome of this action will determine whether the DPUC's order requiring carriers to respond to the ACLU–CT's interrogatories was proper and enforceable, thus having a direct bearing on the outcome of the DPUC Action.[2] Moreover, the OCC, as a statutorily mandated party to the DPUC Action, *see* Conn. Gen.Stat. § 16–2a(a), also has a direct outcome in the resolution of the legal issues present in this suit: the OCC is charged with protecting Connecticut consumers in connection with public service companies, electric suppliers and certified telecommunications providers, and those consumers have an interest in the outcome of the DPUC proceeding—relating to the carriers' disclosure of their private telecommunications activity to the federal government—and thus of this action. Accordingly, the Court finds this element satisfied.

### C. Impairment of Interest

■ For the reasons described in the preceding paragraph, because a determination for the USA in this action will directly impact the DPUC proceeding and the interests the ACLU–CT and the OCC represent there, an impairment of interest if intervention is not granted has been shown.

### D. Inadequate Protection/Representation

■ The USA claims that adequacy of representation by the DPUC defendants is assumed, that those defendants share the same objective as the ACLU–CT and the OCC, and that the presumption of adequacy has not been rebutted. Gov't Opp. at 4–5 (citing *United States v. Hooker Chems. &*

*Plastics Corp.*, 749 F.2d 968, 984–85 (2d Cir. 1984); *Butler*, 250 F.3d at 179; *Mrs. W. v. Tirozzi*, 124 F.R.D. 42, 44 (D.Conn.1989) ("[P]laintiff must overcome presumption of adequate representation that arises when an application has the same ultimate objective as the original parties.")). Specifically, the USA argues that "the State [DPUC] Defendants—which have indicated that they will defend this lawsuit—have the same 'ultimate objective' as the ACLU–CT, *i.e.*, a determination that the State Defendants do have the authority to order disclosure of the information ACLU–CT seeks in the administrative state proceedings. Indeed the United States was forced to bring this action precisely because the State Defendants believe they have that authority." *Id.* at 5.

While the USA is correct that, as discussed above, as a general matter the Second Circuit "has demanded a more rigorous showing [than minimal] of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler*, 250 F.3d at 179, and where "a group (or groups) with recognized interests wishes to intervene and defend an action of the government which the government itself is defending . . . courts tend to assume, in the absence of evidence to the contrary, 'that the government will adequately defend its actions, at least where its interests appear to be aligned with those of the proposed intervenor,'" *Schaghticoke Tribal Nation v. Norton*, 06cv81 (PCD), 2006 WL 1752384, at *5 (D. Conn. June 26, 2006) (citing *Maine v. Dir., United States Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir.2001)), that presumption is not operative to bar intervention in this case. While the DPUC defendants will presumably vigorously defend their interests in this action, and thus the DPUC's authority to compel the carriers to respond to the

OCC's to pursue the state proceedings is therefore derivative of, and contingent upon, whether the State Defendants have authority to continue these proceedings." *Id.*

**2.** *See In re Sierra Club*, 945 F.2d 776, 779 (4th Cir.1991) (Sierra Club had an interest in "the transaction which [wa]s the subject of the action" where Sierra club was "a party to the administrative permitting proceedings where

Regulation 61–99 [wa]s involved," the suit in which Sierra Club sought to intervene arose "out of the permit proceedings and the complaint sought to enjoin the defendants from applying [Regulation 61–99] [and] as a practical matter, enjoining certain sections of Regulation 61–99 in the district court [would] impede Sierra Club's ability to protect its interest in the administrative proceeding").

ACLU–CT's interrogatories, their objectives and those of the ACLU–CT and the OCC, and the individuals/consumers those groups represent, may diverge as their interests do differ—while the DPUC is a neutral state-established adjudicative body seeking to clarify the outer boundaries of its authority and to exercise such authority accordingly, the ACLU–CT and the OCC seek to protect individuals and consumers generally from any improper disclosure of their personal telecommunications activities. *Cf., e.g., In re Sierra Club,* 945 F.2d 776, 780 (4th Cir.1991) (holding that the South Carolina Department of Health and Environmental Control ("DHEC") would not adequately represent Sierra Club's interests in action where Sierra Club represented "only a subset of citizens concerned with hazardous waste" and "d[id] not need to consider the interests of all South Carolina citizens [or] to consider its position vis-a-vis the national union," where the DHEC did, noting "[a]lthough the interests of Sierra Club and South Carolina DHEC may converge at the point of arguing that Regulation 61–99 does not violate the Commerce Clause, the interests may diverge at [other] points"). Moreover, although the USA seeks to gloss over an important distinction between defendants and the movants here in order to analogize this case to *United States v. Hooker Chems. & Plastics Corp.,* 749 F.2d 968, 984 (2d Cir.1984), by referring to the DPUC defendants in this action as the "State Defendants," this case is distinguishable from the facts of *Hooker,* because in that case the governmental entity claimed to adequately represent the interests of the intervenor was suing on behalf of its citizens in a *parens patriae* capacity, whereas here the "State Defendants" are sued in their capacity as officials of the neutral adjudicatory body, DPUC, and thus do not represent the interests of private individuals/telecommunications consumers championed by the ACLU–CT and the OCC. Indeed, as the OCC observes, if DPUC and its officers were capable of adequately representing the consumers represented by OCC, there would have been no reason for the Connecticut legislature to establish the OCC and designate it as a party to all disputed cases before DPUC.

Accordingly, the Court finds that the intervenors have satisfied the fourth factor of potential inadequacy of representation.

## III. CONCLUSION

For the foregoing reasons, both motions to intervene [Docs. # 12, 18] are GRANTED.

IT IS SO ORDERED.

